Crow et al. vs. Marshall.

CROW ET AL. VS. MARSHALL.

1. In an attachment, when the evidence for the plaintiff on a plea in abatement, is confined to the issue, that the defendant was about to remove his property out of the State, with the intent to defraud his creditors, and the bona fides of the debts, alleged to be due by the defendant, is not questioned by the evidence offered for the plaintiff, no rebutting testimony, showing that they were justly due, is necessary.

2. For some purposes, possession is prima facie evidence of a title in fee.

3. When evidence has been once given, the court is not bound to hear its repetition.

## APPEAL from Boone Circuit Court.

### STATEMENT OF THE CASE.

On the first of January, 1847, Philip Crow, as agent for the respondents, Crow, McCreery & Barksdale, made an affidavit to the effect (among other things) that the appellant, Marshall, was about to remove his property out of the State, with intent to defraud, hinder and delay his credi-tors; that he had fraudulently conveyed his property so as to hinder and delay his creditors; that he had fraudulently concealed and disposed of his property so as to hinder and delay his creditors; and that he was about fraudulently to conceal and dispose of his property so as to hinder and delay his creditors; and, upon this affidavit, the respondents, on the same day, commenced suit by attachment against Marshall in the Boone circuit court, to recover the amount of Marshall's note of the 1st May, 1846, payable at four months, for $789 72 with ten per cent. interest after maturity.

Marshall's property being attached, he appeared and pleaded in abatement of the suit, that the matters stated in the affidavit were untrue, upon which issue was taken and after a mis-trial, at the March term, 1848, the cause was tried by a jury on this issue at the August term, 1849.

Upon this trial, the plaintiffs below gave evidence to show, (among other things) that Marshall and Philip Crow (who was the plaintiff's agent) resided in Rocheport; and that Marshall had been a merchant there and bought the goods of the plaintiffs in St. Louis, for which the note in suit was given; that at and before the attachment, Marshall was largely involved in debt; that there were several large judgments against him, and other incumbrances by mortgages and deeds of trust upon his property; and a suit against him was then pending in the Howard circuit court for a large sum of money due to the bank; that at and before the commencement of the suit, Mar-shall had a drove of horses, (the same subsequently attached) at a farm in Howard county, about

five miles from Rocheport, that he had purchased and collected during the same season, for the purpose of taking to market in the south; that Marshall's debts, exceeded his property, and that these horses were about all the unincumbered property that he had at the commencement of the suit, and that he was preparing to start with them to the south, and that he had frequently promised Philip Crow, plaintiff's agent, to secure the debt but had neglected to do so.

The defendant, Marshall, on his part then gave evidence to show (among other things) that he was the owner of a large amount of property, consisting mainly of land, chiefly in Howard county, and slaves, which exceeded his liabilities; that the debts shown in evidence were honest debts for value and the incumbrances upon his property, given at the instance of his creditors in good faith to secure them; that he had paid off part of this indebtedness, and at the December term, 1846, of the Howard circuit court, he withdrew his plea to the bank suit and suffered judgment to go against him at that term, under an assurance from the bank officers that they would not interfere with his taking off the horses which he communicated to them that he had bought up for the southern market, and that it was notorious he had bought them for and intended to take them to that market. A great deal of other testimony was given on both sides, which is here omitted, the purpose of this statement being to show so much of the evidence only as is necessary to present to the court the questions of law intended to be now insisted upon.

In the course of the trial the defendant gave evidence, that in 1842, he resided in a house at Arrow Rock, and had had the possession of this house and lot by himself and his tenants afterwards down to and at the commencement of the suit; and upon this proof of title in fee, offered evidence of the value of the property at the institution of the suit, which was objected to by the plaintiffs and rejected by the court, on the ground that possession was no evidence of title in fee to the property. The defendant then gave evidence that I. Cooper originally sold him this property at $450, and gave an obligation for a conveyance; that a few months ago Marshall had directed him to make the conveyance to Mr. Turner, to whom he had sold the property, and which he did accordingly; and thereupon the defendant gave evidence that the property when Marshall bought it was worth $450, and still was worth $450.

The plaintiff had given in evidence to show the extent of Marshall's indebtedness, two notes; one of 4th May, 1846; payable at one day to Doan, King & Co., for $404 62 with ten per cent. after maturity; the other of 15th May, 1838, payable 1st January, 1839, to Fort and Gorham, for $274, with ten per cent. interest, with a credit of $202 on 9th March, 1839. The defendant on his part offered evidence to prove that he had paid off the debts due Doan, King & Co.; Fort & Gorham, and other debts shown in evidence by the plaintiff, and thereupon the plaintiff objected to proof of any payments made after the commencement of the suit; and the court sustained the objection and refused to allow any evidence of payments made after suit commenced, and rejected the proof offered by defendant for that purpose.

The plaintiff had given in evidence a deed of trust of the 14th December, 1846, given by Marshall to secure first Clark & Herndon in the payment of three notes; one of the 15th October, 1842, payable at one day for $50; one of the 18th October, 1842, payable at one day for $57 with ten per cent. interest; and the third, of the 14th December, 1846, payable one day for $131 25, and then to secure Bailey Marshall in a note of the 5th October, 1843, payable at one day for $600 with ten per cent. interest; and the defendant on his part had given evidence that his father had died in Howard county, the owner of a considerable estate; that he was his father's administrator, and Bailey Marshall's wife defendant's sister, that in 1842 commissioners appointed by the Howard county court for that purpose, made a distribution of the father's estate among the heirs, and that on that occasion defendant gave his note to Jackson, whose wife was one of the heirs for about $100, and to Bailey Marshall for about $200. The defendant also introduced as a witness, John Marshall, son of Bailey Marshall, who testified that before the deed of trust, he had seen in his father's possession notes on the defendant, one as much as ten or twelve years before, and knew of his father's lending the defendant on one occasion fifty dollars. The defendant then proposed to prove that before the deed of trust a settlement took place between Bailey Marshall and defendant, and on that settlement a balance was struck, and

Crow et al. vs. Marshall.

that this balance was the money secured by the deed of trust. This evidence was objected to by the plaintiff and rejected.

The defendant had given evidence that he had been the owner of and had made salt at Boon's lick for several years; and then, for the purpose of proving ownership in himself, to a forty acre lot in section one, adjoining the lick quarter, offered evidence that at the time of the attachment and for several years previous he had occupied this tract by taking the wood off of it for the purpose of making salt, and that no other person was in possession or claimed it; which was objected to by the plaintiff and rejected.

The plaintiff had given evidence that a few days before the attachment, and while Philip Crow, as agent for the plaintiff, and the defendant were in treaty about securing the debt, the defendant promised the agent that he would secure it by the remnant of his goods then on hand; but afterwards conveyed these goods in trust to secure Beman & Knox, and would not apply them as he had promised to do.

The defendant called a witness and offered to prove by him that he (witness) had advised the defendant to secure Knox and Beman on these goods, as they were liable for him as his sureties. This evidence was objected to by the plaintiff and rejected by the court.

All these opinions of the court were excepted to as they were given.

The plaintiffs had a verdict and afterwards the defendant moved for a new trial on account of the verdict being against law and evidence—of the exclusion of the evidence offered by the defendant and rejected by the court.

The court overruled the motion for a new trial, and the defendant excepted and appealed to this court.

## LEONARD, for appellant.

1. Possession of real property is evidence of ownership in fee, and the court erred in excluding the evidence offered for that purpose: 1 Cow. and Hills notes, page 295.

2. The defendant's occupation of the 40 acre lot, by using it for several years to supply his salt works with firewood, with the facts that no other person was in possession or claimed it, was evidence of property in the land in the defendant, and ought to have been allowed for that purpose.

3. The settlement between the defendant below and Bailey Marshall, and the balance struck was evidence of so much money due from defendant to Bailey Marshall, and ought to have been received for that purpose, to account for his creating an incumbrance upon his property by the deed of trust of the 14th December, 1846.

4. The evidence offered through the witness, Washington Knox, that he had advised the defendant to secure Knox and Beman on the remnant of his goods, as they were responsible for him as his sureties, was competent to show that a different motive from that imputed to him, had induced him to change his mind as to the disposition of these goods, and to dispose of them as he had done.

5. The evidence offered by the defendant and rejected by the court, of payments made subsequent to the attachment ought to have been received. This was the strongest evidence of the honesty of the debts, and conduced to show that the defendant had not contemplated any fraud upon his creditors, in the disposition he was making of his property: Reeds vs. Knight, 8 Martin's R. 267-268.

The defendant was surprised on the trial by the rejection of Richardson's deposition, taken ex-parte by consent; and for that reason the verdict ought to have been set aside.

## CLARK, for respondents.

1. The circuit court properly rejected the evidence offered by the appellant, as to possession;

Crow et al. vs. Marshall.

first, because the evidence, if true, did not amount to possession; secondly, it was offered to prove ownership of the land, and not mere possession. The question before the jury was the appellant's ability to pay the debts he owed at the time of issuing out the attachment; he sought by this evidence to show himself the owner of this tract of land, and then to have its value estimated in his estate. By the law of this State all conveyances of land are required to be in writing. The presumption of law therefore, is, that if he owned the land such ownership was evidenced by writing of some kind. The question is, how much he is worth; not whether he had the right to the possession,but what estate he owned in the land; he might have the right to possession and no right in fee, and if his conveyance was shown it might show that he only had a right of possession. The written evidence of title must be first offered, it being the primary evidence before the party is allowed to resort to the second grade; this is true as a general rule and ought to be enforced in this class of cases particularly. See 1 Greenl. Ev. secs. 82, 83, 84, 85 and 86. There is a distinction between this case and cases of ejectment brought against the tenant in possession.

2. The court certainly committed no error in refusing a new trial. The attempt to show that the appellant was surprised by the refusal to permit the statement of Richardson read in evidence was an utter failure, as the record will show. But admitting the appellant's statement was true, he does not swear to merits which is necessary in all cases where a new trial is asked for on account of surprise.

3. From the evidence preserved in the bill of exceptions, the verdict was for the right party, and this court ought not, therefore, to reverse the judgment of the circuit court, notwithstanding there may be error in the record as to facts not affecting the merits of the cause.

SCOTT, J., delivered the opinion of the court.

It is impossible to read the evidence in this cause, and to say that the portions excluded affected the finding of the jury. The evidence for the plaintiff was confined to the issue that the defendant was about to remove his property out of the State with the intent to defraud his creditors. The bona fides of the debts alleged to be due by the defendant was not questioned by the evidence offered on the part of the plaintiff. No rebutting testimony or evidence showing that they were jointly due could therefore have been necessary.

The evidence relative to the possession of a tract of land of forty acres, was of but little weight. It does not appear that its exclusion could have influenced the verdict of the jury. For some purpose, possession is prima facie evidence of a title in fee. But no one would hope to establish a reputation for wealth in this country by showing that he had cut timber on a forty acre tract of land. If the defendant had used the land in the manner he proposed to show, and that was the only evidence of his title, it surely would have availed little or nothing with the jury; certainly not enough to induce us to disturb the verdict, when we consider the magnitude of the debts proved to have been in existence at the time of suing out the attachment.

The exclusion of the evidence relative to the payment of some of the

debts since the beginning of the suit did not prejudice the defendant, as the plaintiffs did not dispute their justice and validity.

The evidence, offered to show that Marshall, the defendant, had been advised by W. Knox to secure Knox and Beman with the remnant of the goods, because they were his sureties, had been previously given and as it was not controverted, a refusal to hear its repetition could not have prejudiced the defendant's cause, especially as he knew when he promised Crow a deed of trust on the goods, that Knox and Beman were his sureties. The evidence, might have been received, but we cannot think that its exclusion would warrant a reversal of the judgment.

The other judges concurring, the judgment will be affirmed.