UNION ELEVATOR COMPANY *et al.* v. KANSAS CITY
SUBURBAN BELT RAILROAD COMPANY,
*Appellant.*

135 353
149 102

135 353
97a 509

Division Two, July 15, 1896.

1. **Railroad**: APPROPRIATION OF PRIVATE PROPERTY: COMPENSATION.
Where three blocks are used in connection with an elevator for one
common purpose, and as one property, and the elevator can not be
successfully conducted without the use of all the blocks, two of which
are used for storing cars, in estimating the damages for the appropri-
ation of a portion of one block for a railway right of way, it is proper
to compute the damages to the property as a whole, although the
blocks are separated by streets across which the owner of the blocks
has laid tracks without the permission of the city authorities.

2. **Municipal Corporation**: STREET: EASEMENT. The owner of
land adjoining a street or alley, owns in this state to the center of
such street or alley, subject to an easement in the public.

3. ———: ———: EJECTMENT. A city may sue in ejectment for land
dedicated for street purposes.

4. **Railroad**: CONSTRUCTING TRACK OVER LAND OF ANOTHER: COMPEN-
SATION: DAMAGES. An elevator company placed a railway track on
a public levee to connect its elevator with a railroad. Besides using
its track as a connection, it was accustomed to use it for storing or
standing cars thereon, while engaged in loading and unloading the
same at the elevator. The track of another railroad, being laid across
such connecting track, did not interfere with its use for connecting
purposes, but only with the standing and storing of the cars. *Held,*
that the elevator company, not having the right to store and stand
cars on the connecting track, even if it had the right to make the con-
nection on the levee, it was error to instruct that it could recover for
the interference of the other railroad, so far as it affected the working
capacity of the elevator in loading and unloading cars in a speedy,
reasonable, and usual way.

5. ———: ———: ———: ———. The privilege of an elevator com-
pany, if any, given it by deed to cross a public levee with a railroad
track not being exclusive, the crossing of such track by another rail-
road track is not, as to the elevator company, a taking or damaging of
private property.

VOL. 135 mo—23

6. ———: ———: ———: ———: ADVERSE POSSESSION. An elevator company, by laying a track on a public levee to connect with a rail-road, and by using the same from ten to fourteen years, does not exercise such an exclusive, adverse use as to confer on it the exclusive right to the part of the levee occupied by the track.

7. ———: PUBLIC STREET. An elevator company can not, for its own private use, lay a railway track upon a public levee or street.

8. ———: APPROPRIATION OF LAND: DAMAGES: EVIDENCE. While it is a better rule that, on the question of damages arising from the construction of a railroad over the land of another, the witnesses should only state the facts, and leave entirely to the jury the question of the amount of damages, still, it seems, the judgment will not be reversed simply because the witnesses are permitted to give their opinion as to the amount of such damages.

9. ———: ———: ———: ———. Residents of a city who testify that they are acquainted with the property over which a railroad has been laid, and that they know its value, are competent to testify as experts on the question of damages, in an action for the appropriation of the land for such railway purposes.

*Appeal from Johnson Circuit Court.*—HON. W. W. WOOD, Judge.

REVERSED AND REMANDED.

*Trimble & Braley* and *G. A. Vandeveer* for appellant.

(1) Blocks 1, 3, and 7 being separated by public streets, are, therefore, separate tracts, and the unlawful occupation of Hopkins street by the respondents, gave them no right to have these blocks considered as one tract. *Pa. Co. v. Railroad*, 151 Pa. St. 334; *Matter of N. Y. C. R. R. Co.*, 6 Hun, 149; *Fleming v. Railroad*, 34 Iowa, 353; *Mikesell v. Durkee*, 34 Kan. 509; *Same v. Same*, 36 Kan. 97; *Glaessner v. Brewing Ass'n*, 100 Mo. 508; *Railroad v. Railroad*, 97 Mo. 457; *Gustafson v. Hamm*, 57 N. W. Rep. (Minn.) 1054; *Heath v. Railroad*, 61 Iowa, 11; *State ex rel. v. Inhabitants*, 36 N. J. L. 79. (2) Respondents could not

connect blocks 1 and 3 by constructing their tracks over the levee and around the north end of Hopkins street, because they show no right so to do, either by city ordinance, or by grant from the owners of the fee. (3) Respondents were not entitled to recover damages on account of being cut off from the river, or any interference in the loading or unloading of boats. They were not riparian owners; the Missouri Pacific track was already there; they show no rights in or over the levee, other than such as the public generally have, and the appellant was rightfully there. *Railroad v. Railroad*, 12 Cush. 605. (4) Damages to blocks 3 and 7 should not have been considered as occasioned by depriving block 1 of a connection with the Missouri Pacific track, because respondents had no lawful means or transporting cars from block 3 to block 1, and thus on to the Missouri Pacific track, public thoroughfares intervening. *Mikesell v. Durkee, supra; Gleassner v. Br'g Ass'n, supra; Railway v. Railway*, 97 Mo. 457; *Gustafson v. Hamm, supra; Heath v. Railroad, supra; State ex rel. v. Inhabitants, supra.* (5) Neither B. C. Christopher, Max Minter, J. K. Davidson, F. A. Talpey, J. E. Seaver, A. McKenzie, Frank Goodnow, Geo. W. Mathews, A. L. O. Schueler, nor Edward C. Wright were qualified to express an opinion as to values of land and damages. *Michael v. Pipe Line Co.*, 159 Pa. St. 99; *Gorgas v. Railroad*, 144 Pa. St. 1; *Railroad v. Pierson*, 35 Cal. 247; *Buffum v. Railroad*, 4 R. I. 221; *Vance v. Pa. Co.*, 115 Pa. St. 325; *Railway v. Stewart*, 50 Kan. 33. (6) Witnesses should not have been asked what the land would be worth without the defendant's railroad. *Doyle v. Railway*, 128 N. Y. 488; *Gray v. Railway, Id.* 499; *Roberts v. Railway*, 28 N. E. Rep. 486 (N. Y. Ct. App.). (7) Respondents were not entitled to recover damages on account of appellant's crossing the switch connection with the Missouri Pacific track

on the levee. *Railroad v. Railroad*, 121 Mass. 124. (8) The question whether blocks 1, 3, and 7 were an entire tract, was not for the jury, and the court erred in giving plaintiff's instruction numbered 1. *Pa. Co. v. Railroad, supra; Matter of Railroad, supra; Fleming v. Railroad, supra.* (9) Defendant's tenth instruction correctly declares the law, and should have been given. Authorities under point 7.

*James Black, J. W. Suddath,* and *Pratt, Ferry & Hagerman* for respondents.

(1) The evidence showed that the elevator building could not have been used without the tracks on the three blocks, and every elevator man who testified so stated, and the undisputed facts show that the property had been so used as a whole since 1876 or 1877. (2) The intervention of a street or highway does not change the above proposition. Lewis on Eminent Domain, sec. 475; *Kansas, etc., Railroad v. Merrill*, 25 Kan. 421. (3) The interference with the track connecting the elevator was a proper element of damages for the consideration of the jury. *Webster v. Railroad*, 116 Mo. 114; 2 Dillon on Mun. Corp. [3 Ed.], 730. (4) If, when defendant's road crossed the connecting tracks, the damages could have been avoided by making a connection elsewhere, the expense on that account would have measured the damage for the crossing. *Railroad v. McGrew*, 104 Mo. 282. In this case this was not possible because of defendant's elevated structure on block 1. (5) Block 1 touched the river for some distance, so that there was the right to cross over the Missouri Pacific track on the level ground to reach it. Witnesses, without any objection, admitted that this was a valuable right. (6) Plaintiffs' witnesses were competent to express an opinion as to values.

*Railroad v. Stock Yards Co.*, 120 Mo. 541; *Thomas v. Mallinckrodt*, 43 Mo. 58.

BURGESS, J.—From a judgment in favor of plaintiffs, the Union Elevator Company and Davidson & Smith, a copartnership composed of James K. Davidson and Edward W. Smith, against the defendant in the sum of $14,000 for the taking and damaging for railroad purposes certain property interests of the plaintiffs by the construction of an elevated railway over block 1 in Coates & Hopkins' addition to Kansas City, and by crossing of a connecting track to an elevator owned and operated by plaintiffs, defendant appealed.

The Union Elevator Company is a corporation organized under the laws of this state, owning blocks 1, 3, and 7 in said addition. Upon block 3 there was a large elevator building. Upon blocks 1 and 7 there were a number of railroad tracks used in connection with the elevator for the purpose of running and storing cars thereon, plaintiffs' contention being that all the blocks were used together as one property. Davidson & Smith were the lessees of the elevator building, using all the blocks as one property in connection with said elevator.

There were two loading railroad tracks running through the elevator. One of these tracks crossed Hopkins street, ran out on block 1, touching the levee and ended at the northeast corner of said block. This track while owned by the elevator company was called the "Fort Scott" track, and was used for the receipt of cars from railroads whose tracks were south and west of the elevator.

The other track which runs through the elevator, being the one furthest north, ran out over what is shown by the annexed plat to be the levee, connecting thereon with the Missouri Pacific railroad track which runs along the river bank.

KANSAS CITY SUBURBAN BELT R R.

Across
The (Coates & Hopkins Add
K C Mo

The railroad tracks on blocks 3 and 4, as shown by the map, are connected with the elevator and used as storage tracks, and essential to the use of the elevator.

The elevator company received cars of grain from the Missouri Pacific Railway by having an engine push a number of cars into the elevator until the car furthest north was at the place of unloading   After it was unloaded then the cars were pushed north until the next one was unloaded, and so on until they were all unloaded.

Hopkins street is between blocks 1 and 3, and Henning street is between blocks 3 and 7.   Said streets do not run any further north than the north line of said blocks.   Those portions of the streets between the blocks have never been used by the public as public thoroughfares.

The "levee" is an irregular strip of ground on the north side of blocks 3 and 7 and a portion of block 1, extending to the river front.   Block 1 touches the river front, and the Missouri Pacific tracks run along the river bank, crossing block 1 and the levee.   Other facts as may become necessary will be stated later on.

The court over defendant's objection and exception instructed the jury as follows:

"1   While defendant had the right to construct, in the manner in which it was constructed, its railroad across block 1 and over the railroad track connecting the elevator and the railroad running along and near the river bank, yet it became liable for the damages, if any, it caused to the property and interests of the plaintiffs by reason of so doing, and in this case you will estimate the plaintiff's damages, if any, in this way:

"*First.* By allowing them the actual market value of that portion of block 1 which was actually

taken and appropriated by defendant for railroad purposes.

"*Second.* The depreciation, if any, in the value of the remaining portion of block 1, after the taking of that portion appropriated by defendant for railroad purposes, provided block 1 was separate from and not used and occupied as a part of a whole elevator property on blocks 1, 3 and 7. But if blocks 1, 3 and 7 were used and occupied as an entirety, and as a whole elevator property, then plaintiffs are entitled in addition to the land taken, to the depreciation, if any, in the value of the remainder of the entire elevator property on blocks 1, 3 and 7 remaining after the appropriation of said part of block 1, caused by the taking of the portion of block 1 considering the manner in which the defendant's railroad was constructed thereon.

"*Third.* If blocks 1, 3 and 7 were used and occupied as an entirety, and as a whole elevator property; if connected therewith was a connecting railroad track running from a track at the easterly side of the elevator to the railroad track running along and near the river bank; if such connecting track was a valuable right to connect with and necessary to the use of the elevator property situated on blocks 1, 3 and 7; if defendant's railroad crossed such connecting track on the land called levee in such a manner as to diminish the working capacity of the elevator in a proper, speedy, usual, and reasonable way in loading and unloading cars and thereby depreciated the value of the entire elevator property on blocks 1, 3 and 7 in a sum additional to any that might be found under the circumstances mentioned in paragraph 2 hereof, and the manner in which the defendant's road was constructed on block 1 prevented plaintiffs making a reasonable, practicable connection with the track running along and near the river bank, then plaintiffs are

entitled to the amount of such further depreciation and from the total damages, if any, defendant is entitled to the amount of such further depreciation and from the total damages, if any, defendant is entitled to have deducted the special and peculiar benefits, if any, to the elevator property on blocks 1, 3 and 7 caused by the construction of defendant's road in the manner in which it was constructed, and the plaintiff's damage, if any, can not exceed the sum of fifty thousand dollars.

"2.    The facilities, if any, for the transportation of grain from the property and a railroad connection, if any, with the elevator and facilities therefor, if any, were property rights which belonged to the plaintiffs, and if either was injured by the construction of defendant's railroad over block 1, if blocks 1, 3 and 7 were used and occupied as a whole, this would be a damage to the remaining property for which plaintiffs should be compensated in ascertaining the damages, if any, in the circumstances mentioned in paragraphs 2 and 3 of the foregoing instruction number 1.

"3.    While it is true that if the railroad crossing made by defendant over what in these instructions has been called the connecting track, damaged the interests of plaintiffs in the elevator property the cost of making any reasonable practicable change of the crossing, and connection to the extent it would lessen such damage would measure the damage, if any, for the crossing, yet if a change of such connection was not reasonably practicable and reasonably sufficient, or if such change would not have lessened the damage, then the damage, if any, on account of the crossing, should be measured by the depreciation, if any, caused thereby in the value of the property on blocks 1, 3, and 7 by diminishing the working capacity of the elevator in loading and unloading cars in a proper,

speedy, usual and reasonable way, if it did so, and if these blocks were used and occupied as a whole property.

"4. In considering the question of values, benefits and depreciation in values, if any, the jury will consider them as of April 11, 1892, and consider any use to which the property was actually put and to which it was naturally adapted. The word 'value,' as used in these instructions, means the fair market value as shown by the evidence."

Among other instructions given on behalf of defendant were the following:

"8. The court instructs the jury that there is no evidence showing that the plaintiffs had any right to use the track of the Missouri Pacific Railroad Company which lies north of the defendant company's track, for storing or standing cars upon.

"9. The court instructs the jury that the building, construction and operation of the defendant railroad company's track and road and the crossing by defendant company with its track and road over the switch running from the north side of the union elevator to the Missouri Pacific track on the north of defendant's track and road, does not in any wise interfere with, nor deprive plaintiffs of any rights or benefits which they have or had under and by virtue of the contract introduced in evidence between Kersey Coates and C. G. Hopkins, executor of the will of W. D. Hopkins, deceased, to the Missouri Pacific Railroad Company, under date twenty-ninth of March, 1876, and which has been identified and marked 'Exhibit T.'"

The following instructions asked by defendant were refused and exception duly saved.

"10. The court instructs the jury that in determining what, if any, damages you will allow the plaintiffs, you can not take into consideration the fact that

the defendant company crosses the switch running from the Missouri Pacific track in the southwesterly direction through the north side of the Union elevator and you can not allow plaintiffs any sum or amount on account thereof.

"11. The court instructs the jury that the plaintiffs have not shown by any evidence any right to connect any railroad tracks, spurs, or switches with the Missouri Pacific Railway Company's track on or across the northeast corner of block 1.

"12. The court instructs the jury that there is no evidence showing that plaintiffs have any right to construct, maintain or operate any spur, switches or railroad tracks over, across or upon that part or parcel of land marked and designated on the plat as 'levee,' except that they have the right to run out from the north side of block 1 a short distance east of the northwest corner of said block over on the edge of the 'levee,' and run a short distance east on the south side of the levee; thence crossing back and returning again to block 1, as shown by the red strip with blue line through the center upon the plat contained in the abstract and introduced in evidence and being the plat referred to in the deed which conveyed block 1 from Coates & Hopkins to the Union Elevator Company.

"13. The court instructs the jury that in determining the amount, if any, you will allow plaintiffs, you can not take into consideration any damage, if any there be, which may have been done to the elevator business or to blocks 3 and 7, or either of them, nor to any buildings or property situated on said blocks 3 and 7, or either of them, but your inquiry must be confined to block 1.

"14. The court instructs the jury that in determining what, if any, damages you should allow the plaintiff, you will first determine the market value of the

land actually taken on the eleventh day of April, 1892, and you should also determine what, if any, damages were done to the remainder of block 1, by reason of the taking and appropriation of the land taken, and add that damage, if any there be, to the market value of the land taken, and from this you should deduct the value of any peculiar or especial benefits, if any there be, which the property in question derives from the location and construction of the defendant company's railroad, and if the value of the land taken, and damages, if any there be, to the remainder of block 1, exceed the amount or value of the peculiar benefits, if any, which the property receives from defendant company's line of road, then such difference will be the amount plaintiffs are entitled to recover, and if the peculiar benefits, if any, which inure to the property are equal to or exceed the amount of the value of the land taken plus the amount of the damages sustained by reason of the taking, if any there be, then plaintiffs will not be entitled to recover anything and your verdict should be for the defendant.

"15. The court instructs the jury that in estimating the amount of plaintiff's damages, if any, you can not take into consideration or allow anything on account of any interference, if any there be, of hauling, handling or moving of cars upon the Missouri Pacific track north of the defendant company's track."

The court of its own motion over the objection and exception of defendant instructed the jury as follows:

"1 The court instructs the jury that in estimating the amount of plaintiffs' damages, if any, you can not take into consideration, nor allow anything on account of any interference, if any there be, of handling, hauling or moving of cars upon the Missouri Pacific track north of the defendant company's track, except so far

as such interference may affect the working capacity of the elevator as to loading and unloading cars in a speedy, reasonable, usual and proper way, and in that way reduces its market value."

1.   Defendant's first contention is that blocks 1, 3 and 7 being separated by public streets, are separate tracts, and plaintiffs' occupation of Hopkins street being without authority it was unlawful and gave them no right to have the blocks considered as one tract.

It appeared from the evidence that all three of the blocks of land in question were used in connection with the elevator for one common purpose, and as one property, and that the elevator could not be successfully operated without the use of all of said blocks. Under such circumstances the jury were properly instructed to estimate the damages to the property as a whole, notwithstanding the blocks were separated by streets.

Where a tract of land although in different townships, ranges, or counties is used as a whole, and as one entire tract, the location of a public highway through it has not the effect of making or dividing it into separate tracts.   Lewis on Eminent Domain, sec. 475; *Kansas, etc., R'y Co. v. Merrill*, 25 Kan. 421. So it has been held that intervening streets do not under the circumstances which exist in this case have the effect of dividing the land into separate tracts. *Hannibal Bridge Co. v. Schaubacher*, 57 Mo. 582; *Sherwood v. Railway Co.*, 21 Minn. 127; *Currie v. Railroad*, 52 N. J. L. 381.

No question was involved in these cases as to the right of the owners of the lots to make use of the alley and streets in connection with the use of the lots, in which respect they differ from the case at bar.

Counsel for defendant insist that the cases cited are predicated of the fact that the owners of the lots

in question in those cases owned to the center of the alley or street, while in this case the fee of the streets was dedicated to the county of Jackson in trust for the public.

Coates & Hopkins addition to the city was platted and the plat filed in the recorder's office of said county on the seventh day of January, 1876. By it Henning and Hopkins streets were dedicated to the public, and the fee therein vested in the city for public purposes. Sec. 8, p. 248, G. S. 1865.

By that statute it is not meant that an absolute fee in the streets is vested in the city with the right of disposal by deed, but simply the right of their control for the use of the public. Whatever may be the ruling in other jurisdictions under similar conditions, the law as announced in this state is that the owner of land adjoining a street or alley owns the fee to the center of such street or alley, as the case may be, subject to an easement in the public. *Hannibal Bridge Co. v. Schaubacher, supra; Snoddy v. Bolen,* 122 Mo. 479.

We are of the opinion that plaintiff showed no legal right to construct its tracks across the streets or to occupy any part of Hopkins street by buildings or tracks, and that such use is unlawful; but it does not necessarily follow that defendant can escape the payment of damages to the property as a whole in consequence of the want of authority in plaintiffs to occupy Hopkins street, when in the absence of such occupancy there would be no connection between the blocks, and no continuity of use. The city has control over its streets and may sue in ejectment for land dedicated for a street. *California v. Howard,* 78 Mo. 88; *McCarty v. Clark County,* 101 Mo. 179. The defendant, however, occupies a different position, having no interest in the streets in question other than that

which is enjoyed by the general public. The city may never complain of their improper use by plaintiffs and defendant should not be permitted to do so.

It is no part of defendants mission to protect the streets against improper uses, nor could it properly assert in its own interest rights possessed by the city which it may not choose to insist upon.

The manner of their occupation was before the jury, and doubtless considered by them in passing upon the question of damages. Defendant should respond in damages to the property as it was when it appropriated a part of it, and thereby damaged the remainder, and not as it may or may not be used in the future.

2. With respect of the right of plaintiffs to use the track of the Missouri Pacific Railroad Company which lies north of the defendant's track for the purpose of storing or standing cars thereon, they showed no such right, and the court so instructed the jury by instruction 8 given at the instance of defendant. And by defendants ninth instruction the jury were told the building of defendant's track deprived plaintiffs of no rights under the contract between Coates & Hopkins and the Missouri Pacific Railway Company, yet by instruction numbered 1 given of its own motion the court told the jury that: "In estimating the amount of the plaintiffs' damages, if any, you can not take into consideration nor allow anything on account of any interference, if any there be, of handling, hauling, or moving of cars upon the Missouri Pacific track north of the defendant company's track, except so far as such interference may affect the working capacity of the elevator as to loading and unloading cars in a speedy, reasonable, usual, and proper way, and in that way reduces its market value."

It seems that by reason of the erection of the

elevated railroad structure on block 1 it was impossible to change the track so as to make a connection on that block, hence their most convenient connection with the Missouri Pacific track was on the levee at a point north of the northern terminus of Hopkins street. And although this connection was on public property, and without authority the jury were authorized by the instruction given by the court of its own motion, to consider the depreciation in value caused to plaintiffs' property by the diminution in the working capacity of the elevator in a proper, speedy, usual, and reasonable way in loading and unloading cars, by reason of the interference by defendant road in the handling and moving cars by plaintiffs on said tracks. This was in effect ruling that while plaintiffs were not entitled to damages for the interference, they were entitled to recover for any damages flowing to them by reason of such interference. The court had already declared that there was no evidence showing that plaintiffs had any right to use this track for storing or standing cars upon it and that the building of defendant's track deprived them of no rights, under the contract between Coates & Hopkins, and the Missouri Pacific Railway Company and it is inconceivable how they could recover in this action for damages flowing from an act, when they could not recover damages occasioned by the act itself.

The levee is as much public property as a street, is of the same character, and its conveniences and inconveniences are shared in common by the public. Upon this question the case comes clearly within the rule announced by this court in *Railway v. St. Joe Term. R'y Co.*, 97 Mo. 457. There is no difference in principle.

This case is clearly distinguishable from *Railroad v. McGrew*, 104 Mo. 282. In that case the defendant's

coal mine was connected by rail with a switch of the Wabash Railway Company on its own land, and in a condemnation proceeding by the plaintiff for right of way, this connection was interfered with, and it was held to be a valuable property right for which defendant should be compensated. Under this ruling plaintiffs' facilities to connect its track with the Missouri Pacific track on block 1, of which they claim to have been deprived by reason of the elevated construction of defendant, on its road, was a proper subject to be considered by the jury in estimating the damages to which plaintiffs were entitled, but does not justify the contention that they were entitled to damages for interference with the working capacity of the elevator in loading and unloading cars in consequence of being deprived by defendant of the use of the Missouri Pacific track for shifting and standing cars thereon. The right to connect on the levee, even if conceded, did not confer the right to shift and stand cars on the track but only conferred upon them the right to deliver on or receive cars from it.

Plaintiffs' mode of utilizing this track was by having placed thereon a number of cars and by pulling then backward and forward by means of a car puller, as occasion might require; a different use than that made of the track to switch cars upon to and from the Missouri Pacific tracks.

It seems that defendant's track cut off one or two car lengths of this connecting track which in no way interfered with plaintiff's rights to use the track for connecting purposes, but did for standing, and shifting cars thereon.

The interference by defendant in so far as standing and shifting cars on this track by plaintiffs were concerned, was not an element of damages to be con-

sidered by the jury, and plaintiffs' instructions and especially the third paragraph of their first instruction, and instruction number 1 given by the court of its own motion were in the language used in each of said instructions, to wit, "diminishing the working capacity of the elevator in a proper, speedy, usual, and reasonable way in loading and unloading cars," misleading and should not have been given.

In *Railroad v. Railroad*, 121 Mass. 124, the damages claimed were not for any change required in the condition of the land of the complaining company, or in the structures thereon, but for the expenses of maintaining a flagman alleged to be necessary to guard against the greater liability to accidents, and it was held that it was not entitled to damages for the interruption and inconvenience occasioned to its business, by reason of the construction of a diagonal road. The use of the track in question for standing and shifting cars thereon might be dispensed with at any time, and could not in any event affect the measure of damage in a case of this character.

3.   Plaintiffs claim the right to use the levee for a connection with the Missouri Pacific Railroad by virtue of a deed from Coates and the executor of Hopkins to the Union Elevator Company, dated August 1, 1876.

In platting the addition, Coates and Hopkins reserved to the Missouri River, Fort Scott & Gulf Railroad Company the right to maintain and operate a railroad track with switches from the same along and over Railroad street, and to themselves the right to lay or cause to be laid and permit and grant to any railroad company or companies or individuals, the right to lay, maintain and operate one or more railroad tracks and switches, on, over, along, and across the levee.

The deed from Coates & Hopkins to the elevator

company was made subject to the conditions and reservation specified in said deed as follows:

"The right to lay, operate and maintain a railroad track over and across a strip of ground thirteen feet wide in block one of said Coates & Hopkins addition, and on land in part north of said block one of said addition, said track to be laid in the middle of the said strip of ground as indicated by a line marked in blue ink upon the map or plat hereto attached, which is hereby made a part hereof. The said middle line of said strip of ground hereby granted, is more particularly described as follows:

"Beginning at a point twenty-three feet south of the northeast corner of said block one thence north 66 deg. 1 min., two hundred and thirty-five and four tenths (235 4-10) feet, thence on a 12 deg. curve two hundred and nine and four tenths feet, more or less, to the west line of said block one. Also the right to lay, operate and maintain railroad tracks as hereinafter specified upon and over the following described strip or parcel of land in blocks three and seven of said addition, which is hereby granted to said party of the second part, its successors and assigns for said use to wit: Beginning at a point in said block three on the west line of ground owned by said party of the second part, and upon which its elevator building is erected, said point being forty-one feet northerly from the north line of Railroad street on the west line of said elevator lot, thence in a southwesterly direction on a 12 deg. 10 min. curve one hundred and fifty-six and four tenths feet, to a point thirteen feet north, 29 deg., 50 min. west from the north line of said Railroad street, thence westwardly on a line parallel with the north line of Railroad street and feet distant therefrom to the west line of said block three thence southerly on the west line of said block three to the north line of said Rail-

road street, thence easterly on said north line of said street to the west line of said elevator lot, thence northerly along the west line of said lot to the place of beginning.

"And it is hereby agreed and understood that such tracks shall be laid, operated and maintained over the last above described strip of ground as follows, to wit: One to be continuation of the track now laid over and across the south side of said elevator lot, and shall be laid as indicated in blue ink upon the map or plat hereto attached which lines indicate the rails of said track. Also the right to lay, operate and maintain as aforesaid a railroad upon and over a strip of ground thirteen feet in width off the south side of said block seven the northerly rail of said track to be laid not nearer than four feet to the north line of said strip of ground as indicated upon the plat attached hereto. And it is hereby further agreed by and between the parties hereto that the railroad track now laid on said Railroad street shall be so changed and re-laid, as to make them conform to the lines designating the same on said plat, provided, however, that the outside of the south rail of the south track shall not be nearer than four feet to the south line of said Railroad street.

"And it is hereby expressly understood that all of the rights and privileges herein granted, are upon the express condition that the said party of the first part, and their assigns, shall at all times have the right, which said right is a further consideration of this grant, to make switch connections with all or any of the tracks aforesaid, or to cross any of said tracks with switches or tracks, the meaning and intent hereof being that the grounds in blocks one, three and seven of said addition belonging to said party of the first part, shall hereafter have and possess all needed railroad

facilities to accommodate all such business as may hereafter be established thereon.''

At the time of the execution of this deed the elevator company owned the two hundred and fifty feet of block 3 upon which the elevator stands and Coates and Hopkins the remainder of said block, and all of blocks 1 and 7. The reservation extends no further than to give the grantors and their assigns the right to cross and connect at any point or points they might see proper with tracks to be constructed by the elevator company upon the rights of way conveyed by said deed. Nothing said in the deed can reasonably be construed as conveying a right of way over the levee other than at the point where the right of way leaves the north side of block 1 running thence along the levee, returning again to said block. Nor were any additional rights passed to the elevator company by the deeds from Coates and wife, and the heirs of Hopkins to the company made in 1882. They are simply quitclaim deeds to the property the title to which had already passed from Coates and Hopkins and are no broader in their scope and meaning than the deed made August 1, 1876. The right to lay railroad tracks on the levee was not appurtenant to said blocks, hence no such right passed by either of said deeds.

But even if the right did pass to plaintiffs by said deeds, or in any other way, it was not exclusive, and defendant having acquired a similar right by deed from the heirs of Coates and Hopkins by deed dated April 4, 1892, the crossing of plaintiffs' track on the levee by defendant's track is not a taking or damaging of private property, within the meaning of article 2, section 21, of the constitution. *Railroad v. St. J. Term. R'y Co.*, *supra; Railroad v. Railroad*, 121 Mass. 124.

But it is asserted, that it is ''idle to say that the

rule which applies to public streets is applicable to a crossing on the levee, but that the case is precisely the same as if the crossing had been on private property." We are not prepared to give our assent to this position.

We have already said that the right to lay, what is called by plaintiffs, railroad tracks on the levee for their own private use, never passed to them, by reason of the deeds under which they claim title to lots, 1, 3 and 7, nor did they by simply laying the tracks on the levee and by its use from ten to fourteen years, exercise such an exclusive and adverse use of it, as to confer upon them the exclusive right to that part of the levee occupied by the track.

4.    With respect to plaintiffs' right to damages by being prevented from making a connection with the Missouri Pacific Railway Company's tracks at the northeast corner of block 1 it was not shown that they had any such right by contract or otherwise. They had no right nor could they obtain the right to cross Hopkins street with their track, nor had they a right of way around the end of said street from Coates and Hopkins, or their heirs. Nor could they force a connection of their track with the track of the Missouri Pacific Railway Company, at that point, or compel that company to operate the switch after the connection should be made, for the reason that plaintiffs' tracks are private property, used for their own exclusive use and benefit. This court in *State ex rel. v. Smith*, 114 Mo. 180, expressly held the Union Elevator to be a private warehouse. Such tracks can not be laid upon the public levee or streets which are for the use and benefit of the general public because to do so would be a perversion of their proper and legitimate use.

5.    As block 1 touched the river for some distance, and the elevated structure on defendant's road is

on this block, and interferes with plaintiffs' access to the river, thereby diminishing the value of their property, this was an element for the consideration of the jury. *Railroad v. Stock Yards Company*, 120 Mo. 541, and authorities cited. But if the structure is on the levee then it is not a proper element for the consideration of the jury, unless plaintiffs sustained damages by reason thereof peculiar to themselves, and not shared by the general public.

6. Witnesses should not have been allowed over the objection of defendant to testify as to the amount of damages to the property by reason of the construction of defendant's road.

7. The authorities are in much conflict, even in in this state, as to whether witnesses should state the facts and leave it to the jury to determine the amount of damages in such cases, or whether witnesses may give their opinions as to the amount, and thus usurp the province of the jury. The better rule is as stated in *Spencer v. Railway*, 120 Mo. 159, that is, that witnesses should only state facts, and leave entirely to the jury the question as to the amount of the damages. However, the judgment should not be reversed upon that ground alone. *Roberts v. Railway*, 28 N. E. Rep. 486; *Doyle v. Railway*, 128 N. Y. 488; *Gray v. Railway*, 128 N. Y. 499.

It is also insisted by defendant that a number of witnesses who testified in behalf of plaintiffs as to the value of the property in question were not qualified to testify thereto as experts. These witnesses were residents of the city, and without exception stated that they were acquainted with the property and knew its value. This was all that was necessary to qualify them as experts; the weight to be given to their testimony was for the jury, to be measured by the intelligence of the witnesses, and their ability to pass upon

such values. *Railroad v. St. Louis Stock Yards, supra.*

In Lewis on Eminent Domain, section 437, it is said: "This is a question the determination of which is left mostly to the discretion of the trial judge. * * * It is not necessary that the witnesses should have been engaged in the real estate business. Intelligent men who have resided a long time in the place, and who are acquainted with the land in question and say they know its value, are competent, although they are merchants or farmers and have never bought or sold land in the place. * * * The value of such opinions depends upon the intelligence of the witness and the knowledge and experience which he possesses in such matters, and is in all cases a question for the jury."

This objection is untenable.

The judgment is reversed, and the cause remanded to be tried in accordance with the views herein expressed. GANTT, P. J., and SHERWOOD, J., concur.