THE STATE EX REL. STATE HIGHWAY COMMISSION, APPELLANT, V. GEORGE H. YOUNG ET AL.—23 S. W. (2d) 130.

Division One, December 30, 1929.

278

*B. F. Boyer* for appellant.

*James & James* for respondents.

ELLISON, C.—This is a proceeding brought by the State High-way Commission to condemn for State Highway No. 20 certain lands in Saline County belonging to the defendant, George M. Young. Upon the filing of the petition, commissioners were duly appointed, who assessed the defendant's damages at $900. The plaintiff filed exceptions to the report and requested a trial by jury. The jury assessed the damages at $2300. From the judgment on that verdict the plaintiff has appealed. The assignments of error complain of the admission of testimony and the giving and refusal of instructions.

The respondent Young owned a farm containing 698 acres in one body, lying in Sections 9, 10, 15 and 16, Township 50 N., Range 20 W., as shown on the accompanying plat. For convenience in reference we have divided it into four tracts: The Phil Young tract, on the south side of the farm, containing 178 acres; the Don Young tract, in the center of the farm and bordering on the south side of the west portion of the state highway, containing 320 acres; the Allen tract, abutting the same west part of the highway on the north side and containing about 120 acres; and the Barnes tract, containing

about eighty acres. This latter is diagonally bisected by the state highway from southwest to northeast, making two triangles each of about forty acres. Of the whole farm, as divided by the highway, approximately 538 acres are left in one body on the south side of the road, and 160 acres on the north side.

On the north side of the whole farm ran a county dirt road; on the south side a road known as the Arrow Rock Road. There was formerly a public road on the east side, but it had fallen into disuse, if it was not abandoned, and brush had grown up in it. Beginning at the northeast corner of the Barnes tract there was a private road running south on the east side thereof and meandering southerly along the middle line of Section 10 through the farm to

the Arrow Rock Road. This private road was the only outlet from the farm to the two public roads on the north and south sides thereof. Located upon it were the dwelling houses of Phil and Don Young, the respondent's sons. The dwelling house on the Allen place was near the public road on the north, and the Barnes house was on the south triangular half of that tract near the east side, close to and facing the private road leading south. Barnes was a tenant. The Young brothers farmed their two tracts, and it seems the respondent farmed part of the Allen tract and rented the rest of it.

The strip taken for State Highway No. 20, and for an incidental borrow-pit from which to obtain material for a fill, was 7.57 acres in area, and was appropriated for that portion of the highway between the cities of Slater and Marshall. This highway furnishes the farm with a shorter and better route to these points than it had before. We do not find the record discloses the type of road to be constructed, though the witnesses speak of it as being sixty feet wide with easy grades and curves; but we take judicial notice from the Centennial Road Law, Laws 1921 (1st Ex. Sess.) section 29, pages 131, 145, 161, that it is to be a hard-surfaced road with grades, bridges and culverts all constructed and maintained by the State.

In giving their testimony the witnesses for the respondent estimated the value of the strip taken at $125 to $160 an acre and the cost of fencing the highway on both sides at about $1,000. The witnesses for the appellant placed a lower value on the strip, $80 to $125 an acre, and said nothing about the cost of fencing.

Except as to the fencing and the land taken, the respondent in developing his case restricted his questions concerning damages to the damage to the Barnes tract alone. The witnesses stated their estimates of damages in dollars and cents and admitted they were arrived at by taking the Barnes eighty-acre tract and considering its separated and triangular halves distinct and apart from the rest of the farm. In other words, the respondent proceeded on the theory that his damages consisted of the value of the strip of land taken, plus the total cost of fencing, plus the diminution in value of the remaining part of the Barnes tract figured as a separate parcel. To such singling out of one tract the appellant repeatedly objected and saved exceptions.

There was substantial testimony tending to show that special benefits accrued to the whole farm and enhanced its market value $5 to $12.50 an acre. On the other hand there was testimony that the farm received no special or peculiar benefits different from other lands in that community along the state highway. If necessary, other evidence will be noted in the discussion.

I. The appellant's first point is that the court erred in allowing the witnesses for respondent to restrict their testimony as to damages to those accruing to the eighty-acre Barnes tract across which the road ran, out of the whole farm of 698 acres, this on the theory  that the damage to the Barnes tract standing alone was not the true measure of damages to the whole farm resulting from the severance of the Barnes tract into two triangles. It is a well-established rule that where a tract of land consists of several parcels all connected and forming one body and owned and used together for a common or general purpose and as one property, the jury, in estimating the damages sustained by the owner by reason of the condemnation, should consider the injury to the whole and not simply the injury to the parcels touched by the appropriation. [Wyandotte, K. C. & N. Ry. Co. v. Waldo, 70 Mo. 629, 632; Springfield & S. Ry. Co. v. Calkins, 90 Mo. 538, 544; C., M. & St. P. Ry. v. Baker, 102 Mo. 553, 559, 15 S. W. 64; Union Elevator Co. v. K. C. Sub. B. Ry. Co., 135 Mo. 353, 365, 36 S. W. 1071, 1073; K. C. Sub. B. Ry. Co. v. Norcross, 137 Mo. 415, 424, 38 S. W. 299, 301; St. L. M. & S. E. Railroad Co. v. Aubuchon, 199 Mo. 352, 368, 97 S. W. 867, 871; St. L. M. & S. E. Rd. Co. v. Drummond Realty & Inv. Co., 205 Mo. 167, 174, 103 S. W. 977, 978; 1 Elliott on Roads & Streets (4 Ed.) sec. 288, p. 342; 2 Elliott on Railroads (3 Ed.) sec. 1257, p. 828; 2 Lewis, Eminent Domain (3 Ed.) sec. 698, p. 1207; 9 L. R. A. (N. S.) p. 792, note.]

This rule applies to this case since the farm in question is of the character mentioned. It was held by one owner and was by him devoted to its one and only suitable purpose, agriculture. The circumstances alone that it was occupied by different tenants who farmed their respective parcels separately is not sufficient to destroy the oneness of the farm, all parts of it being shown to have been adaptable to use as a unit at the time of the appropriation. Damages for the appropriation of the part taken and for fencing, were claimed for the whole farm as a unit. Moreover, the respondent assumed the entirety of the farm in his instruction numbered 2. That instruction allowed him as compensation the value of the land taken and the damage to the remainder, considering "the size and shape of the two tracts into which the farm is divided," etc. Again, the respondent in his brief concedes this proposition by stating that, "after the landowner has proven his damages (to one parcel) the condemnor has the right to offer evidence of special benefits not only to each tract or subdivision, but to all the owner's lands, which special benefits are deductible from the owner's damages."

In such circumstances the rule requires the assessment of damages as well as benefits to be made as for one entirety, and evidence in support either of the issue as to damages or the issue as to benefits, in order to be admissible, must in its essence relate ultimately to the whole. However, with respect to injuries or advantages, as distinguished from damages or benefits in the legal sense of the latter terms, it was not improper to develop in evidence any injury sustained or special advantage received by any parcel, if it was considered in relation to the rest of the farm and would by reason of its nature affect the value of the farm as a whole. [St. L., O. H. & C. Ry. Co. v. Fowler, 113 Mo. 458, 469-70.] For instance, there is evidence in nearly every such case concerning the physical effect of the condemnation on specific parts of the whole area involved, such as the necessity of fencing a particular field, the shape in which it will be left, the draining or impounding of water at a particular place and the like. All these have their legitimate bearing when measured by their effect on the whole.

But the evidence complained of here was not directed to the question as to how the entire farm would be affected. After showing the Barnes tract would be cut into two triangles, some of the respondent's witnesses gave it as their opinion that that particular eighty acres would be diminished in value as much as $75 per acre by reason of being severed into two irregular portions—just as if that were all the land the respondent owned—whereas the north triangle throughout its whole length of one-half mile adjoined the Allen tract and still constituted a part of a 160-acre body of land, and the south triangle for a distance of one-fourth mile abutted the 498 acres lying still further south. These latter facts were ignored, indeed, expressly excluded from the calculations of every witness for respondent, although it may well be that if they had been taken into consideration the witnesses would have said the decrease in value per acre was less. Either triangle almost certainly would be worth more in connection with the land it adjoined than it would be by itself, and the adjoining land might be benefited in value by the addition giving it more frontage on the improved road. Taking the farm as a whole, the damages from the severance of the Barnes eighty acres might not be as great as if that tract were a separate unit. For these reasons the admission of the testimony complained of was erroneous.

We do not mean to say evidence showing the monetary damage to a particular parcel of a whole tract would not be admissible in any circumstances. The evidence might be connected up with other evidence so as to become competent, or it might be elicited on cross-examination in an effort to test the accuracy or truthfulness of the

witness. And in any case where there is an issue as to whether the particular parcel is used or usable as a part of the whole, and that fact ·is negatived by substantial evidence, the party so contending should be allowed to prove the separate damages on his theory of the case. [St. L., M. & S. E. Railroad Co. v. Aubuchon, supra, 199 Mo. 1. c. 368, 97 S. W. 1. c. 871.] But in this suit there was no substantial evidence that the Barnes tract should be treated as a segregated parcel, and as we have said, the respondent conceded the contrary by his instruction on the measure of damages and the admission in his brief.

II. The respondent advances two reasons why the error in the admission of this evidence was cured. The first is that the appellant permitted the respondent's first witness to testify concerning the damages to the Barnes tract alone, without objection. That is true, but the matter arose in this way. On direct and redirect examination the witness told about the value of the land appropriated, the fencing that would be required on the whole farm and what damage would result from cutting through the Barnes eighty acres. The examination proceeded on the apparent theory that respondent was attempting to show the damage to the whole farm. On re-cross-examination the appellant brought out that in making his estimate of the money damages to the Barnes tract the witness had excluded from his consideration the fact that the two· triangles adjoined other parts of the same farm. The witness said the north triangle could not be figured as making one body with the Allen tract *because there was a mortgage on the latter!* The appellant objected and moved to strike out the previous testimony, but was overruled. Thereafter, throughout the trial the objection was interposed repeatedly.

The respondent says the delay in making the first objection waived the error, citing such cases as Boulicault v. Oriel Glass Co., 283 Mo. 237, 247, 223 S. W. 423, 426, which holds that if a question calling for incompetent evidence is not objected to and the answer of the witness is responsive, a motion to strike it out comes too late. We think the authority is not· in point because in that early stage of the trial the respondents had not been sufficiently developed to make the significance of the question apparent. But even if we be wrong in that and concede appellant's counsel was caught napping it does not follow that the right to object to this line of testimony was thereby foreclosed for the remainder of the trial.

In some cases where incompetent evidence was admitted over objection, after evidence of the same class had previously been introduced without objection, the courts have said the error· was not

*prejudicial.* [Monahan v. K. C. Clay & Coal Co., 58 Mo. App. 68, 75; Bauer Groc. Co. v. Smith, 74 Mo. App. 419, 424; Bruce v. Bombeck, 79 Mo. App. 231, 237; Roy v. Kansas City, 204 Mo. App. 332, 343, 224 S. W. 132, 138; Morris v. U. D. B. & T. Co. (Mo.), 8 S. W. (2d) 11, 15; Neely v. C. G. W. Rd. Co. (Mo. App.), 14 S. W. (2d) 972, 978.]

But these cases were decided on their own peculiar facts. The general rule is that "the admission of improper evidence without objection does not render proper the admission of subsequent testimony to the same effect, or of similar testimony to other facts, over objection." [38 Cyc. p. 1397; 9 Ency. Ev. pp. 41-3; Smith v. Sov. Camp. W. O. W., 179 Mo. 119, 133-4, 77 S. W. 862, 866; Roberts v. Nowlin (Tex. Civ. App.), 290 S. W. 800, 801; Barrows v. Alford, 129 Okla. 255, 267, 264 Pac. 628, 630.] The issue in this case as to land valuations and damages was important, hotly contested and ran clear through the trial. It would be unjust to say that the mere lapse of counsel in failing to interpose an objection covering this point on the direct examination of respondent's first witness should cut off appellant's right to challenge the testimony of sixteen other witnesses for respondent on the same point, and opened the way for him to recover on a false theory. The appellant's failure to object did not mislead the respondent or hurt his case. We think there was no waiver.

III. Respondent's second contention is that even though the admission of evidence showing the damage to the Barnes tract separately was error, the error was cured by Instruction 1 given by the court at appellant's request. That instruction said, in substance, that in determining the damage or benefits resulting from the condemnation to the part of the respondent's land remaining after the appropriation, they should consider such damages or special benefits as affected the whole of said remaining lands and not those affecting merely some particular part thereof as a separate and distinct tract.

It is the rule, save in exceptional circumstances, that error committed in admitting incompetent evidence is cured by the giving of an instruction withdrawing the evidence. [Stauffer v. Met. St. Ry. Co., 243 Mo. 305, 321, 147 S. W. 1032, 1036; Grott v. Johnson, S. & S. Shoe Co. (Mo.), 2 S. W. (2d) 785, 788; McCarter v. Burger (Mo. App.), 6 S. W. (2d) 979, 981.] The instruction under consideration is not explicitly a withdrawal instruction. Instead, it merely restricts the application of the testimony, leaving it all to be considered within the limits set. But the necessary effect of the instruction was to direct the jury to disregard the testimony admitted insofar as it

tended to show damage to the Barnes tract as a separate unit. It was all that appellant asked and the court gave it in the form requested. On the facts in this record we think it was sufficient to cure the error.

IV. The appellant complains also of the giving of respondent's instructions numbered 1, 2 and 3, on the sole ground that the defendant failed to sustain the burden of proof by adducing any substantial evidence showing damage to the whole farm, in consequence of which the issue was not submissible. This contention cannot be sustained. There was evidence as to the value of the land appropriated and as to the cost of fencing, and in addition the testimony of at least one witness, Harris, on cross-examination was that he had considered the damage to the Barnes tract in its relation to the whole farm, and had arrived at his estimate accordingly.

V. Respondent's instruction numbered 1 is further assailed on the ground that it erroneously defines special benefits to be those which are unique and enjoyed by the respondent's farm alone. That part of the instruction told the jury that from the damages ascertained they "should deduct the benefits if any peculiar to such tract arising from the running of the road through it; and by peculiar benefits is meant such benefits derived from the location of the road as are *peculiar to the tract itself*, and not shared in common by it and *other* lands in the same neighborhood."

In the giving of this instruction the learned trial judge followed a form approved in McReynolds v. K. C., C. & S. Ry. Co., 110 Mo. 484, 487, 19 S. W. 824, and later sanctioned in theory in Mississippi County v. Byrd, 4 S. W. (2d) 810, 812. But since the trial of the case below an instruction of similar pattern was condemned by this court en banc in State ex rel. State Highway Commission v. Jones, 321 Mo. 1154, 15 S. W. (2d) 338, 340. That decision holds the advantages enjoyed by land from abutting on a highway improvement may be a special benefit, notwithstanding other lands along the highway are similarly benefited. In other words the special benefits do not have to be exclusive and peculiar to the one tract involved. Following the well-reasoned opinion in the Jones case, an instruction identically like the one in this cause was disapproved in State ex rel. State Highway Commission v. Duncan, 323 Mo. 339, 19 S. W. (2d) 465, 466-7. So it must be ruled the giving of the instruction in this instance was error.

VI. In view of the fact that the case may be retried, we shall consider one other point. The appellant complains of the refusal of

his instruction numbered 5, which, condensed, states this proposition: that although other lands in the community received benefits of the same nature from the construction of the highway, yet if the benefits derived by the respondent's farm were substantially greater in degree than those accruing to the other lands the respondent was chargeable with the excess benefits he enjoyed, as an offset to his damages.

We think the trial court was correct in rejecting this instruction. It might allow the respondent to be charged with general benefits. Granting there may be exceptions in unusual circumstances, it is not true ordinarily, at least, that if a tract receives benefits substantially greater in degree than those of the same nature accruing to other land in the community, the excess benefits thereby become special—in which event alone they may be offset against damages in a condemnation proceeding. As expressed in appreciation of market value, general benefits, themselves, may differ in amount or degree varying with the tract, its remoteness from the improvement, intrinsic character, etc. All the land in the community may not—almost certainly will not—receive the same general benefits in a monetary sense; and the general benefits derived by the particular tract in litigation might be greater than those enjoyed by any other land, and would be reflected in its increased value. But only that part of the increase resulting from special benefits—those, if any, arising from the land's position directly on the highway improvement, such as availability for new or better uses, facilities for ingress and egress, improved drainage, sanitation, flood protection and the like—would be chargeable.

The ultimate question in a case like this does not involve a determination of the amount of benefits in dollars and cents enjoyed by the land involved as compared with *other* lands in the community. What would be the yardstick? Would they be measured against the highest benefits or the lowest benefits received by any other tract, or against the average level of benefits, or what? Such a rule would be very difficult of application in the ordinary case, and would not reach the real fact to be ascertained. The true inquiry is how much of the augmented market value of the *particular* tract is attributable to special benefits. Sometimes it may be helpful in the solution of this question to find out how the improvement affects other land in the community not on the highway, but if and when this is so, the facts are of value only as evidence on the main issue. While the distinction is sometimes hard to draw, the rule in this State in the ordinary case is that special benefits are to be differentiated from general benefits by their nature or kind rather than by the amount or degree. [State ex rel. State Highway Commission v. Jones, supra

290

(15 S. W. (2d) l. c. 340); 10 R. C. L. sec. 140, p. 159; 20 C. J. sec. 259, p. 822; 2 Lewis, Eminent Domain (3 Ed.) sec. 702, p. 1213; 2 Elliott on Railroads (3 Ed.) sec. 1251, p. 822; 2 Nichols on Eminent Domain (2 Ed.) sec. 249, p. 765; Randolph, The Law of Eminent Domain, sec. 270, p. 251; L. R. A. 1918A, p. 885, note; 9 L. R. A. (N. S.) p. 783, note.]

For the error, in giving respondent's instruction number one, the cause is reversed and remanded. *Lindsay* and *Seddon, CC.*, concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.