592 S.W.2d 777 (1980)
STATE of Missouri ex rel. STATE HIGHWAY COMMISSION OF MISSOURI, Plaintiff-Appellant,
v.
Sherman A. TATE et al., Exceptions of J. C. Young et al., Defendants-Respondents.
No. 61463.
Supreme Court of Missouri, En Banc.
January 15, 1980.
Thomas E. Cheatham, Bruce A. Ring, Jefferson City, for plaintiff-appellant.
Harold J. Fisher, David L. Smith, Springfield, Albert F. Turner, Mountain Grove, for defendants-respondents.
WELLIVER, Judge.
This case raises the issue whether appellant, the State Highway Commission, has the right to introduce evidence of special benefits in a condemnation proceeding. We hold that appellant does have that right, and reverse and remand for a new trial.
The State Highway Commission filed a petition on September 5, 1973, seeking to condemn an easement across a quantity of land for the relocation of Route 60 and reconstruction of Route 95 in Mountain Grove, Missouri. Land belonging to respondents was ordered condemned for this purpose on October 9, 1973. The landowner, J. C. Young, held approximately 13.46 acres of unimproved land (a dwelling located on the land had been removed by the landowner) located on the northern edge of Mountain Grove and bound on the east by Route 95 and on the north by Route N. The area of right of way taken was 1.66 acres. Route 95 was rebuilt and improved and moved 63 feet to the east, away from respondents' property. A street, later turned over to the city for maintenance, was constructed on *778 the west side of the property. Access to Route 60 after the taking was limited to one access ramp. Access to Route 95 after the taking was limited to two curbed, partially concrete entrances built by appellant from which gravel entrance roads lead into respondents' property.
The report of the commissioners was filed on October 12, 1973, and both appellant and respondents filed exceptions. The first trial of the cause was held in Taney County in June of 1973, resulting in a verdict of no damage. Respondents filed a motion to set aside the verdict and for a new trial, specifying nine grounds.[1] Respondents were granted a new trial by an order entered September 6, 1974, and a change of venue to Greene County was agreed upon by counsel. The transcript on this appeal does not disclose the ground on which the trial court sustained respondents' motion for a new trial. Prior to the second trial, respondents filed a motion in limine, the first numbered paragraph of which sought to prevent appellant from presenting any evidence that the respondents' property remaining after the taking was increased in value because of the location of a new interchange and an access road nearby, or from making "any other reference to `special benefits'." On June 21, 1976, after a pretrial conference, the court sustained the first numbered paragraph of the respondents' motion in limine, and restrained the appellant from presenting evidence on, or mentioning, the issue of special benefits. The parties waived a jury trial and tried the case before the court sitting as a jury. On June 25, 1976, the court entered judgment in favor of respondents for $20,350.00. Appellant brought this appeal alleging that it was error for the court to exclude evidence of special benefits. After opinion by the Missouri Court of Appeals, Southern District the case was transferred to this Court.
Appellant sought to introduce evidence that the value of respondents' property which remained after the condemnation (the residue) was increased because of (1) access to an improved highway, (2) access to a new street, (3) construction of new entrances into the property, and (4) a change in the highest and best use of the remaining property.
It is well-settled in Missouri that special benefits to the residue of a landowner's property may be set off against the award of compensation for a taking in a condemnation suit, but general benefits may not be set off. State ex rel. State Highway Commission v. Southern Development Co., 509 S.W.2d 18, 24-25, 27 (Mo. *779 banc 1974); State ex rel. State Highway Commission v. Vorhof-Duenke Co., 366 S.W.2d 329, 339 (Mo. banc 1963); State ex rel. State Highway Commission v. Clevenger, 365 Mo. 970, 979, 291 S.W.2d 57, 62 (1956); State ex rel. State Highway Commission v. Young, 324 Mo. 277, 289, 23 S.W.2d 130, 135 (1929); North Nishnabotna Drainage District v. Morgan, 323 Mo. 1, 7, 18 S.W.2d 438, 440 (1929); State ex rel. State Highway Commission v. Jones, 321 Mo. 1154, 1159-62, 15 S.W.2d 338, 340-41 (banc 1929); Mississippi County v. Byrd, 319 Mo. 697, 703-04, 4 S.W.2d 810, 813 (1928). See generally 3 Nichols, Eminent Domain § 8.6211[26], pp. 8-257 to 8-260; 29A C.J.S. Eminent Domain §§ 178-183, pp. 781-96. The distinction between special benefits and general benefits is drawn in State ex rel. State Highway Commission v. Jones, 321 Mo. 1154, 1159, 15 S.W.2d 338, 340 (banc 1929) as follows:
"General benefits," those accruing to the owners of property in a neighborhood or vicinity generally, are not deductible from the damages; to make such a deduction would be to require the landowner whose property is taken in part to liquidate his damages by contributing his share of the benefits which inure to the public as a whole. "Special benefits" stand on a different footing; they are such as accrue directly and proximately to the particular land remaining by reason of the construction of the public work on the part taken. Such benefits must, of course, be reflected in an increase in the market value of the land.
In State ex rel. State Highway Commission v. Young, 324 Mo. 277, 289, 23 S.W.2d 130, 135 (1929) this Court said:
All the land in the community may not almost certainly will notreceive the same general benefits in a monetary sense; and the general benefits derived by the particular tract in litigation might be greater than those enjoyed by any other land, and would be reflected in its increased value. But only that part of the increase resulting from special benefitsthose, if any, arising from the land's position directly on the highway improvement, such as availability for new or better uses, facilities for ingress and egress, improved drainage, sanitation, flood protection, and the likewould be chargeable.
Cases involving the condemnation of a right of way for highway construction often cite changes in available uses or in the facilities for direct access that enhance the value of the residual land as paradigm examples of special benefits. Southern Development Co., 509 S.W.2d at 27; Vorhof-Duenke Co., 366 S.W.2d at 339; Clevenger, 365 Mo. at 979, 291 S.W.2d at 62; Young, 324 Mo. at 289, 23 S.W.2d at 135; Jones, 321 Mo. at 1162, 15 S.W.2d at 341.
In the pre-trial hearing, respondents relied on the authority of State Highway Commission v. Southern Development Co., 509 S.W.2d 18 (Mo.1974) for respondents' claim that creation of "an interchange such as this . . . [results in] a general benefit rather than a special benefit." Apparently the trial court sustained respondents' motion in limine and related objections to trial testimony solely on the basis of the Southern Development case.
Southern Development involved the condemnation of land for construction of a portion of Interstate Highway I-435 in Kansas City. The condemnation petition sought 82 acres of the 1,481 acres of land then owned by the Southern Development Company in the Northeast Industrial District of Kansas City, and 1.67 acres of the 19.31 acres of land then owned by the Kansas City Southern Railway Company. From a jury verdict awarding damages of $166,000 and $9,000, respectively, the landowners appealed. Appellants alleged error in admitting the testimony of the expert witness for the State Highway Commission, Vincent J. O'Flaherty, contending that O'Flaherty had taken into consideration factors that constituted general benefits in determining the fair market value of appellants' property after the taking, contrary to "the well-established rule in Missouri that only special benefits are offset against damages from the condemnation in arriving at the sum to be awarded for the taking." 509 *780 S.W.2d at 24. The Court found that O'Flaherty's testimony relating to improved access to and from the interstate system related only to general benefits and not to special benefits deductible from the damages incurred by the landowner. This finding, however, was predicated on the fact that direct access to the landowners' property was not changed by construction of I-435 and on the stipulation that the landowners' property was not made available for new and more remunerative uses by the highway construction. 509 S.W.2d at 25-26. The Court concluded:
An interchange which merely changes the flow of traffic in that it provides new access from an existing street or road onto a highway but which does not provide a separate direct access onto a defendant's property does not constitute a separate benefit to the property from which the right-of-way was condemned unless it causes that defendant's property to become available for new and more remunerative uses or provides other special benefits such as improved drainage, sanitation or flood protection. If such special benefits result, then they should be deducted from other damages incurred by the landowner, and this is true even though the construction of the interchange will benefit all property in the area by improving the means of access to the highway.
Id. at 27.
The Southern Development case does not stand for a general proposition that an increase in the value of a landowner's property resulting from the construction of a new interchange nearby is always a general benefit which may not be set off against the landowner's damages. On the contrary, Southern Development makes clear that changes in direct access onto a landowner's property and changes in the highest and best use of the property are elements of special benefits which may be set off against the amount of damages in determining the amount of compensation due the landowner.
In the instant case, appellant did not make a formal offer of proof in the pre-trial conference, but referred instead to the evidence of special benefits adduced in the first trial. In suggestions in support of motion for transfer, respondents point out that in the pre-trial conference, "the trial court had before it the transcript of the original trial and thus available [sic] to the evidence in dispute." In oral argument before this Court, the parties agreed that this Court could consider as constituting appellant's offer of proof the testimony relating to benefits elicited in the original trial and four questions and answers relating to benefits to which objections were sustained in the second trial.
In the first trial, Jimmy Proctor, a real estate appraiser, testified as an expert witness for appellant. Mr. Proctor testified that the construction of the limited-access highway interchange adjacent to respondents' property had resulted both in a change in the highest and best use to which the residual property could be put and in the creation of two new entrances leading directly onto respondents' property:
Q. [On direct examination by Mr. Cheatham:] What, in your opinion, Mr. Proctor, is the highest and best use of the property after the taking?
A. The highest and best use after is commercial and probably for a motel.
Q. I show you what has been marked as Plaintiff's Exhibit 8. There has been testimony by Mr. Young that this is a shopping center, Hillcrest Shopping Center site, which indicates Route 60 and the right of way gone and a ramp, a new 95 with two entrances provided.
Let me ask you this: What entrances have been on 95 after this taking?
A. Two commercial entrances, sir.
Q. Do you think this would possibly be one of the higher and better uses of the property after the taking of this shopping center that Mr. Young has planned here?
A. Yes, sir, it could be.

*781 Q. Could the property, in your opinion, have been utilized for this purpose or any commercial purpose prior to the taking?
A. Well, it could have been, yes, sir.
Q. What do you mean it could have been?
A. I doubt the economic feasibility of it.
Q. Oh, you mean it's physically possible?
A. Yes, sir.
Q. Does the sales and activity indicate a demand for commercial activity prior to the taking?
A. Sir, as I understand it, some of the sales I have heard of only today, they are very small lots, and they were in the central business district. I see no development commercially outside of the central business district.
In the second trial, appellant's attorney sought to elicit testimony from Hubert Riebold, a real estate broker and appraiser, that the value of respondents' property after the taking was enhanced by a change in the highest and best use, by the new entrances to Route 95 that had been constructed on the east side of respondents' property and by the frontage to the new city street on the west side of respondents' property:
Q. (By Mr. Cheatham) Mr. Riebold, just answer yes, or no, do you feel the access to the new city street constructed as a part of this project benefits the remaining property?
A. Yes, I do.
Q. Do you feel the construction by the Highway Department, as a part of this project, of two commercial entrances to the property . . . [benefits] the remaining property?
A. Yes, sir.
Q. Do you feel the access to the new and improved Route 95 benefits the remaining property?
A. Yes, sir.
Q. Do you feel that because of this highway construction project there has been a change in the highest and best use of the remaining Young property?
A. Yes, sir, I do.
Q. Considering these factors, Mr. Riebold, what is your opinion [of the] value of the property immediately after the taking?
MR. FISHER:Excuse me: Your Honor, we object to this question, and to any answer thereto, and ask that the prior testimony be stricken, because it could only be . . . an opinion based upon inadmissible evidence, which is the special benefit.
The court sustained respondents' objection to Mr. Riebold's testimony concerning the value of the property after the taking, in the light of the change in direct access and in the highest and best use.
The tendered testimony demonstrates that appellant sought to introduce evidence of benefits to the residual property that were of a different kind than the general benefits discussed in Southern Development. Appellant sought to show that respondents' property benefitted from direct access onto improved Route 60 by way of a single ramp; direct access onto improved Route 95, by way of two newly constructed commercial entrances; direct access to a new street; and a change in the highest and best use of the property. These items are clearly items of special rather than general benefit. Appellant has a right to present evidence with respect to these benefits, and their value should be set off against the landowners' damages.
Respondents contend that the change in access to Routes 60 and 95 cannot constitute a special benefit, because the access afforded by the ramp to Route 60 and the two entrances onto Route 95 is inferior to the unlimited access to the unimproved highways which respondents enjoyed prior to the taking. The fact that the actual number of access points is decreased is not central. Whether the change in access constitutes a special benefit or another source of special damage to the landowner is a question of fact for the trier of facts.

*782 Where a limited-access highway is substituted for a land-use highway, there does not appear to be any basis for a presumption of special benefit to the adjoining land; but the condemnor is entitled to prove, if it can, that the limitations imposed on the adjoining landowner's right of access are in fact a special benefit.
State ex rel. State Highway Commission v. Vorhof-Duenke Co., 366 S.W.2d 329, 339 (Mo. banc 1963). The burden of proving special benefits remains on the condemnor. Id. at 337. Evidence that the landowner must incur expense to completely pave the entrances to Route 95 may reduce the value of the special benefit of access, but it does not necessarily mean that the creation of the entrances conferred no special benefit.
We find the order of the trial court sustaining the first paragraph of respondents' motion in limine and excluding all evidence of special benefits constituted prejudicial error. Although this was a bench-tried case, the record before us is insufficient for us to render a judgment as to what the amount of respondents' damages, if any, should be. Rule 73.01.3(c); City of St. Louis v. Brune, 466 S.W.2d 677, 679 (Mo. 1971). We therefore reverse and remand the cause for a new trial.
All concur.
NOTES
[1] Respondents alleged (1) that appellant's evidence on the issue of special benefits in fact showed the benefits to be general benefits; (2) that the verdict was so out of line with the evidence as to show bias and prejudice on the part of the jury; (3) that the court erred in refusing to declare a mistrial upon the appellant's attorney inquiring of respondents' witness whether he knew that after the date of the taking respondents had received an offer for the purchase of the land in question for $70,000, when there was no evidence to support the claim that such an offer was made and evidence of such an offer was inadmissible and immaterial to the issues in the case; (4) that the court erred in refusing to declare a mistrial when the appellant's attorney stated in closing argument that the case involved nothing more than a swap of 1.61 acres of land for 1.3 acres of land from the state, despite the court's ruling that the statement was improper and that such statements should not be made; (5) that the appellant's attorney repeatedly made improper statements in examining witnesses which aroused bias and prejudice in the jurors against the respondents, in particular: reference to respondent J. C. Young's knowledge that he was buying land for a shopping center to be located on Highway 60, reference to the preparation of a plat of a proposed shopping center at the request of respondent J. C. Young, repeated reference by appellant's attorney to an "outer road" to be located along the north side of respondents' property as "Highway N," despite the admission in bench conference that this road would not be Highway N, and reference to respondent Young's relocation of dirt on the property as if it were wrongful conduct; (6) that appellant's attorney intentionally acted to prevent respondents from having a fair trial, by repeating questions or statements to which objections had been sustained; (7) that three instructions did not conform to MAI instructions; (8) that the jury was not instructed that the appellant had the burden of proving special benefits; and (9) that the testimony of Kermit Moore regarding the value of the land before and after construction of the interchange was erroneously excluded.