KANSAS CITY SUBURBAN BELT RAILROAD COMPANY, *Appellant*, v. NORCROSS *et al.*

### Division One, February 9, 1897.

1. **Railroad**: CONDEMNATION PROCEEDING: DAMAGES: EVIDENCE. Inquiry as to the damages, in a railroad condemnation proceeding, extends to the entire tract of land used for one general purpose by the defendants, though only certain recorded subdivisions of it are described in the petition as occupied by the company's right of way.

2. ——: ——: ——: ——. The railroad having moved on the land, disturbed defendant's possession and initiated the inquiry as to damages, plaintiff can not limit its scope to that part of the land only to which defendant can establish a perfect title.

3. **Land**: POSSESSION: PRIMA FACIE TITLE. Possession of land under claim of title is, as against a stranger, *prima facie* evidence of title in fee.

4. **Evidence**: PROPERTY VALUES. A witness can testify to the value of property if his knowledge of it is derived through the general avenues of information to which the ordinary business man resorts to inform himself of values for the proper conduct of his affairs and to guide his sales and purchases of property like that in controversy.

5. ————: DAMAGES: RAILROAD CONDEMNATION PROCEEDING. Inquiry in a railroad condemnation proceeding as to the damages to defendant's property must be limited to the value of the land at the time the condemnation proceeding was begun.

6. ————: ————: ————. On such inquiry it is not error to permit a witness to testify to the value of the property before it was interfered with by plaintiff and its depreciation since.

*Appeal from Clay Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Trimble & Braley* for appellant.

(1) The court erred in admitting testimony regarding the feasibility of the proposed roadway, in permitting the map, exhibit "A," to be introduced in evidence, which map was not a faithful representation of the land either at the time the land was taken or at the trial, and was based wholly upon the imaginations and conjectures of defendants, and in allowing certain witnesses to testify to the value of the lands with the proposed road located over them. *Goodwin v. Evans,* 33 N. E. Rep. 1031; *Fleming v. Railroad,* 34 Iowa, 353; *Railroad v. Pearson,* 35 Cal. 247; *Pinkham v. Chelmsford,* 109 Mass. 225; *Gardner v. Brookline,* 127 Mass. 358; *Tidewater Canal Co. v. Archer,* 9 G. & J. 479; *Railroad v. Suydam,* 17 N. J. L. 25; *Burt v. Wigglesworth,* 17 Mass. 302; *Powers v. Railroad,* 33 Ohio St. 429; *Munkwitz v. Railroad,* 64 Wis. 403; *Dorlan v. Railroad,* 46 Pa. St. 520; Lewis on Em. Dom., sec. 480; *Railroad v. Abell,* 18 Mo. App. 632; *Railroad v. Cleary,* 125 Pa. St. 442. (2) The court erred in admitting in evidence the map of defendants marked exhibit "A," for the reason that it was not proved that the defendants owned any other lands than those mentioned in the petition. For the same reason the court

erred in hearing evidence of damages to other land than that mentioned in the petition, in refusing plaintiff's instruction number 7, and in giving defendants' number 6.   *Zeitinger v. Hackworth,* 117 Mo. 505; Mills on Eminent Domain, secs. 161 and 167; *Jones v. Railroad,* 68 Ill. 380; *Mix v. Lafayette Railroad,* 67 Ill. 318; *Railroad v. Coleman,* 3 Wash. 228; *Railroad v. Grovier,* 41 Kan. 685; *Reisner v. Railroad,* 27 Kan. 383, in effect overruling *Railroad v. Owen,* 8 Kan. 418, cited by respondents in their brief; *Robbins v. Railroad,* 6 Wis. 636; *Diedrich v. Railroad,* 42 Wis. 248; *Winchester v. Stevens Point,* 58 Wis. 350.   (3) The court erred in permitting T. M. James to testify as an expert on values of land and upon damages occasioned the defendants by the construction of the railroad.   He was not qualified to express an opinion.   He did not testify to any acquaintance with the property at the time the railroad was built and his entire information was founded "on what property holders were holding their property at."   He knew of no sales.   *Railroad v. Pearson,* 35 Cal. 247; *Buffum v. Railroad,* 4 R. I. 221; *Michael v. Crescent Pipe Line,* 159 Pa. St. 99; *Railroad v. Vance,* 115 Pa. St. 325; *Gorgas v. Railroad,* 144 Pa. St. 1; *Flint v. Flint,* 6 Allen, 34.   (4) The testimony of witness Brooks, upon the value of the entire brick plant on the lands mentioned in the petition and off them, was improperly admitted.   (5) The second specification in defendant's first instruction is erroneous because it left to the jury to find without evidence the quantity of land owned by said defendants. It assumes that there is inconvenience in getting from one side of the railroad to the other.   The fourth specification in same instruction is erroneous because it contains a false definition of peculiar benefits.   The Norcross idea of peculiar benefits is that there are none.   *Lee v. Railroad,* 53 Mo. 178; *Smith v. Combs,* 78 Mo. 32; *Railroad*

*v. Ridge*, 57 Mo. 599; *Railroad v. Waldo*, 70 Mo. 629; *Dougherty v. Brown*, 91 Mo. 26; *Newby v. Platte Co.*, 25 Mo. 258; *Hosher v. Railroad*, 60 Mo. 303; *McReynolds v. Railroad*, 110 Mo. 484.

*Brown, Chapman & Brown* and *J. M. Sandusky* for respondent.

(1) It has been decided in a large number of cases that possession under a deed claiming title is *prima facie* evidence of title. *Crow v. Marshall*, 15 Mo. 499; *Barry v. Otto*, 56 Mo. 179; *Miller v. Marks*, 20 Mo. App. 369; *Keith v. Bingham*, 100 Mo. 308, *Railroad v. Owen*, 8 Kan. 418; 1 Greenleaf on Evidence, sec. 618; 2 Greenleaf on Evidence, sec. 555; 2 Wharton on Evidence, sec. 1332; 2 Best on Evidence, sec. 366; *Ward v. McIntosh*, 12 Ohio St. 231. (2) Any evidence which tended to show the value of the improvements, the manner in which they were affected, or the difference in value between the plant as it stood before and after the construction of the road was competent testimony. *Hannibal Bridge Co. v. Schaubacher*, 57 Mo. 582; *Railroad v. McGrew*, 104 Mo. 282; *Railroad v. Porter*, 112 Mo. 361; *Ragan v. Railroad*, 111 Mo. 456; *Patterson v. Boston*, 23 Pick. 425; *Railroad v. Capps*, 72 Ill. 188; Mills on Eminent Domain, sec. 192. (3) In condemning land its value is to be assessed with reference to what it is worth for sale in view of the uses to which it may be put, and not simply with reference to its productiveness to the owner in the condition in which he has seen fit to leave it. *Bridge Co. v. Ring*, 58 Mo. 496; Lewis on Eminent Domain, secs. 478 and 479; *Boom v. Patterson*, 98 U. S. 408; *Goodin v. Railroad*, 18 Ohio St. 169; 6 Am. and Eng. Ency. of Law, p. 569. (4) The jury are not confined to only the purpose to which the land is devoted. They may consider

any purpose for which it is adapted, and which enters into and affects its market value. *Bridge Co. v. Ring*, 58 Mo. 491; *King v. Railroad*, 32 Minn. 224; *Railroad v. Braham*, 79 Pa. St. 447; *Washburn v. Railroad*, 59 Wis. 364; *Railroad v. Keith*, 53 Ga. 178; *Railroad v. McGehee*, 41 Ark. 202; 6 Am. and Eng. Ency. of Law, p. 569. (5) Where a part of a tract of land is taken the owner is entitled to recover not simply the value of the land taken, but also the direct injury to the remainder of the land resulting therefrom. *Hannibal Bridge Co. v. Schaubacher*, 57 Mo. 582; *Railroad r. Waldo*, 70 Mo. 630; 6 Am. and Eng. Ency. of Law, pp. 571, 573, 574; *Railroad v. Anderson*, 39 Ark. 167; *Putnam v. Douglas County*, 6 Ore. 328. (6) In the case of city property, the fact that the premises have been platted as distinct lots will not affect the owner's right to recover for an injury to the whole where they are in fact used for the same purpose and herein a tract of land. 6 Am. and Eng. Ency. of Law, p. 578; *Cummins v. Des Moines*, 63 Iowa, 397; *Welch v. Railroad*, 27 Wis. 108; *Huron v. Voorhes*, 50 Mich. 506; *Railroad v. Dressel*, 110 Ill. 89; *Sherwood v. Railroad*, 21 Mich. 122; Lewis on Eminent Domain, sec. 475; *Railroad v. McGrew*, 104 Mo. 182. (7) The testimony of witnesses James Shinnick and Voorhees was competent. The persons who testify in these cases are not supposed to have science or skill superior to that of the jurors. They have merely a knowledge of the particular facts in the case. *Railroad v. Calkins*, 90 Mo. 543; *Railroad v. Delissa*, 103 Mo. 125; *Railroad v. Stock Yards*, 120 Mo. 550; *Swan v. Middlesex*, 101 Mass. 173. (8) As to this class of cases the courts have held that the qualifications of witnesses to express an opinion as to the value of land is largely in the discretion of the trial judge. Lewis on Eminent Domain, sec. 473; *Railroad v. Anderson*, 39 Ark. 167; *Howard v.*

*Providence*, 6 R. I. 514; *Railroad v. Kirby*, 44 Ark. 103; *Warren v. Spencer Water Co.*, 143 Mass. 155.

ROBINSON, J.—This is a proceeding by condemnation to subject certain real estate of defendants' in Kansas City to the public use of a right of way for the plaintiff railway company. After the preliminary steps taken, the commissioners filed with the circuit court of Jackson county their report, to which defendants filed exceptions. The exceptions were sustained and an appraisement duly ordered by a jury. On application of defendants a change of venue was awarded from Jackson to Clay county, where the cause was tried, resulting in a verdict for $7,000 for defendants, and plaintiff appeals.

All exceptions to be reviewed arise out of the trial of the cause in the Clay county circuit court, and concern only the propriety of the proceedings therein to determine the damages sustained by defendants.

To fix the location of the land involved in this proceeding, its surroundings and the location of the proposed railroad thereon, I have caused to be inserted herein a map used by counsel during their argument before this court.

The description of the land sought to be acquired by plaintiff, as ascertained from its petition, is as follows:

"Two certain strips or pieces of land, one of which comprises parts of lots numbered respectively five (5) and six (6) of block number 4, and lots number six (6) and seven (7) of block number three (3), in that part of Kansas City, Missouri, known as Lykins' addition, and also a part of the vacated alley which lies south of the north line of said lot number 6 of block number 3, and east or northeast of the center of

lot number 7 of block number 4 of said Lykins' addition; and the other of which said strip comprises a part of lot number five (5) of block number five (5) of the same addition; said two strips or pieces of ground being more fully described as follows: that is to say, so much of said lots and vacated alley above described as is included within lines on each side of, parallel to and eight (8) feet equally distant from the center line of the Kansas City Suburban Belt Railroad Company's line of road, as the same is shown to be located upon and across said land by the profile map of the line of said road filed in the office of the county clerk of Jackson county, Missouri (under the name of the Consolidated Terminal Railway Company of Kansas City), on the twenty-ninth day of April, 1892.''

The property is all located west of Broadway, and between the Missouri Pacific and Hannibal & St. Joe Railway tracks, and extends west from Broadway to Washington street, as appears by the above diagram.

The defendants claim to own lots 2 to 10, inclusive, in block 3, except a part of lot 2 taken for right of way of the Hannibal & St. Joe Railroad. Also lots 1, 2, 3, 5 and 6 in block 4, and lot 5 in block 5, which shows that they claim the entire tract shown upon the diagram between the Missouri Pacific and Hannibal & St. Joe Railway Company's tracks west of Broadway, except lot 4, in block 4, and lots 1, 2, 3, 4, 6 and 7 in block 5, each of these lots having forty-eight feet frontage.

This property at Broadway between the two railroad tracks is three hundred and fourteen feet, and between the railroad tracks at the west line of lot 5 in block 5, and the west line of lot 10 in block 3, is two hundred and forty-two feet. The average distance between the railroad tracks is two hundred and fifty-six .feet. The property extends west from Broadway be-

tween three hundred and three hundred and fifty feet. The alleys between these lots and blocks have been vacated except a small part of the alley at the Broadway entrance. There is a small, triangular piece of ground lying next to the alley at the Broadway entrance which defendants do not claim to own.

In October, 1892, this entire piece of property was claimed to be owned by the defendants and had been occupied by them for some five years as a brickyard, where they manufactured and burnt brick. They occupied all the lands claimed to be owned by themselves, and also certain of the lots not claimed to be owned by themselves but held under contract. In October, 1892, this entire property was being used for said purposes as one entire tract of land, and used for a common purpose. There was located upon said property the machinery necessary for running and operating a brick plant, the necessary buildings, dry houses, and sheds to protect the machinery and the newly made brick; also four large kilns, and a large number of racks used for the purpose of drying brick in the open air. The plant was in operation in October, 1892.

At that time plaintiff constructed its railroad over the lands of the defendants, a little north of the center, over the lands between the Missouri Pacific and the Hannibal & St. Joe tracks, the road entering the property at Broadway, and leaving it at the west line of lot 5 in block 5. This road is an elevated road over Broadway street, and runs elevated from ten to fifteen feet above the present surface of this property. The elevated structure is supported by piling driven into the ground a few feet apart, and remains an elevated structure for about a quarter of a mile as it runs west after leaving the property of defendants. The construction of this road cuts off the defendants from that portion of their property which lies north of this road, except

as to lots 1, 2 and 3, in block 4, which are still acces-
sible through the short sixteen foot alley at Broadway
(which is partially occupied by this structure), and a
frontage of fifty feet which lot 1 has upon Broadway.
The present surface of the ground is from three to six
feet above grade at the south side of the property, and
about twenty feet above grade at the north side of the
property.

Numerous assignments of error are alleged by
appellant, all of which may be sufficiently disposed of,
however, by noting a few objections made to the action
of the trial court in receiving and excluding testimony
offered.

I.    Plaintiffs insist that the trial court committed
error in hearing testimony as to damages to other lots
than those mentioned in its petition, and also to the
machinery that was located thereon, and that as to
those lots defendants have shown no title.

The testimony was that the defendants took pos-
session in the year 1888 of all the lots included in the
plat above shown, on which their names are marked
under warranty deeds from parties claiming to own
them, and have continuously held and used them since
as one entire tract (including also three others not
owned by them) for the purpose of a brickyard, where
they have been engaged in making and manufacturing
bricks, and that they were using all of said lots for that
purpose at the time plaintiff began these proceedings
to condemn its right of way over the part of said lots
named in its petition.

While the lots described in plaintiff's petition for
condemnation are but a part of a contiguous, compact
body or parcel of land used for one general purpose by
the defendants, the fact that the land, of which these
lots formed a part, had been subdivided by some former
owner, into a number of separately named and desig-

nated parcels, or lots, can not be said to deny the present defendants the right to prove the damages to these not named in plaintiffs' petition by the last subdivision number, merely because of that subdivision, which in nowise affects the use of the lots as one entire parcel of land for one general purpose by defendants, and the hearing of testimony upon that issue was not error on part of the trial court, provided the further objection made by appellants can not be sustained, "that no adequate proof was made as to defendants' ownership of the lots claimed to have been damaged that were not named in its petition." *Chicago, etc., Railroad Co. v. McGrew*, 104 Mo. 292, and cases cited.

Plaintiff sought only a strip, from defendants, sixteen feet wide across the lots named in its petition. It might have charged in its petition that the strip it desired was located on the north or south half of the same lots (as the case might be) and according to the theory of plaintiff limited thereby the amount of damages to the one half of the lots so named; or if we go further on the line of plaintiff's contention, the inquiry in this case might have been limited to the strip across defendants' lots sixteen feet wide, being only the part sought to be condemned.

Plaintiffs were not required, in order to condemn the strip across defendants' lot, to describe other than the strip sought for its right of way, but that limited description of defendant's possession, which it sought to condemn for its own use, against defendants' will, could not limit or confine the inquiry of damage to that narrow compass, but must embrace all damages that the defendants have sustained to their entire body of land, through which the road runs, belonging to them and used for one general purpose.

The same suggestions as above may be applied to plaintiff's exception to the action of the trial court in

permitting testimony showing the damage to that part of defendant's brick plant not on the lots actually taken by plaintiff for right of way purposes, but which was affected and rendered less useful by reason of the location of plaintiff's railroad in such a way as to divide and separate one part of the plant from the other part located on parts of the lots condemned.

Was then proof of defendants' ownership of the lots claimed to have been damaged by the construction of plaintiff railroad, but not named in its petition filed herein, adequate, under the circumstances, to authorize the submission of the question of their damages in that regard to the jury?

The deeds offered by defendants to show title to the lots not taken were the same in character as were used to show their title to those taken, and, as stated before, were warranty deeds from parties claiming to be owners thereof, and all bear date September 26, 1888, and the testimony was that defendants took possession under all the deeds at that time, to all the lots now claimed by them, and have remained in possession ever since, using and occupying them as one entire tract continuously as a brickyard, with a large brick plant thereon.

Now, since we have held that when plaintiff made application to appropriate, in this character of a proceeding, a part of defendants' land, it was bound to take notice of the whole thereof, used as one entire tract, and compensate them for all damage done to the whole, will the mere failure of defendants, in this case, to show a title, sufficient to maintain ejectment proceedings, be said to defeat their right to recover such damages here as they have sustained?

As to the title to those lots damaged by the construction and maintenance of plaintiff's railroad, but not named in its petition, plaintiff has no concern.   It

seeks no title or interest in these lots whatever. As to them it is in no better position than a stranger, and the law has always been that possession of land under claim of title as against a stranger, is *prima facie* evidence of title in fee. Lewis on Eminent Domain, sec. 442; Mills on Eminent Domain, sec. 161; *Keith v. Bingham*, 100 Mo. 308; *Barry · v. Otto*, 56 Mo. 177; *Crow v. Marshall*, 15 Mo. 499.

The proof of defendants' title to the lots not named in plaintiff's petition, but damaged by the construction of its railroad, was ample to maintain their right to damages, whatever may be said of it as being short of title sufficient to maintain an action of ejectment. Against defendants' will, the plaintiffs have moved upon and disturbed their possession. Plaintiff, and not defendants, initiated this inquiry as to damages, and having done so, will not now be allowed to limit its scope to that part of defendants' premises which in its pleasure it saw proper to name in its petition, or to that part only of which defendants are able to establish a perfect title to, either of record, or by adverse possession for the statutory period of limitations.

II. Plaintiff's next assignment of error, that the trial court permitted defendants to introduce in evidence a map, showing a proposed private street through their lots, and the rearrangement thereof, and permitted testimony as to the value of the lots as readjusted with a frontage on the proposed streets, was rendered unavailing by the after action of the trial court itself in excluding from the jury by adequate instruction all consideration of the proposed street and the value of the lots with a frontage thereon.

III. Plaintiff next alleges as error on the part of the trial court, the admission of testimony by several witnesses as to the amount of damages caused by the

appropriation of the lots, and the damage done to the others not taken, on the grounds that they had not qualified to give testimony as experts.

The witnesses all showed themselves acquainted with the defendants' property both before and since it had been crossed by plaintiff's railroad, and how it was cut up and divided. Some owned lots, and lived in the neighborhood of defendants' property, while others were real estate and insurance men, doing a general business in their respective lines in the city, and all after one mode or another claimed to be acquainted with the market value of the property. As, for instance, the first witness, a Mr. James, to whom plaintiff made objection, testifies as follows:

"*Q*. What is your business in Kansas City? *A*. Wholesale crockery and queensware business—and retail.

"*Q*. How long have you lived in Kansas City? *A*. A little over thirty-nine years.

"*Q*. Are you acquainted with this property—the value of this property in controversy here? *A*. I think I know something about it. I don't profess to know as much as a real estate man, maybe.

"*Q*. You own a piece of property in here? *A*. A little west of that.

"*Q*. Do you know, Mr. James, how this road runs over that property? *A*. I think I do.

"*Q*. At what do you value that property in between those two roads west of Broadway?

"Plaintiff objected for the reason that he hasn't shown that he is acquainted with its market value. Objection overruled. Excepted to.

"*Q*. Do you know what property was worth in that locality in October, 1892? *A*. Do you mean fronting on Broadway?

"*Q.*  I mean this property anywhere on this map. Say lot 5 in block 5, down here.  Say that piece of property.  *A.*  I think that is worth $100 a foot.

"*Q.*  Do you know its value?

"Objection to testimony of witness, because he isn't qualified as to values, and isn't acquainted with the market value of that lot.

"*Q.*  Do you know what the market value of property was there at that time?  *A.*  I had always held mine about the same.

"*Q.*  Do you know what the market value of property was there at that time?  *A.*  How am I to judge the market value?

"*Q.*  What people say it's worth.  *A.*  I know it was testified to by myself and others last fall—

"*Q.*  *By Court:*  Do you know what the market value is?

"*Q.*  Do you know in a general way what the market value was last fall?  *A.*  I can speak relative to my own.

"*Q.*  Your own and others similarly located?

"*Q.*  *By the Court:*  Do you know what the market value was there at that time?  *A.*  My judgment was at that time and is yet that it was worth $100 a foot.

"*Q.*  Do you know what the market value was? *A.*  As to say I know.

"*Q.*  *By Court:*  The market value consists of what it would sell for on the market.  Do you know what the market value of that property was at that date?  Answer yes or no.  *A.*  I can't say just what it would sell for exactly.  I know what I was offered for my own and didn't take it.

"*Q.*  What in your opinion is the reasonable value of property in this neighborhood?  I will ask you if you know what the market value of property was in

that neighborhood last fall? *A*. I don't know as there was any being sold there. I don't know that there was any sold.

"*Q*. You know generally what the value of property was down there?

"*By Court:* What would it sell for? *A*. I know property down there generally that I talked of—

"*Q*. I don't think you get just the meaning of our question.

"*Q*. You testified before the commissioners in this case? *A*. I did. I so stated awhile ago.

"*Q*. Did you inform yourself as to how people held property; what they thought the market value was at that time? *A*. I tried to.

"*Q*. Did you make up your mind then as to the market value of property? *A*. Yes, sir.

"*Q*. You knew at that time what the market value was? *A*. I knew that was what property holders were holding their property at. At what I testified it was worth.

"*Q*. Do you know of the Norcross brothers buying property there in 1888? *A*. I knew they were buying, but I don't know just what they bought at the time.

"*Q*. Can you say now, before the jury, that you knew the market value of that property last fall? *A*. I think—I thought I did, or I wouldn't have testified to it.

"*By Court:* Go ahead.

"*Q*. You take lot 5 in block 5—what would be the value of that property a foot?

"Plaintiff objected to the question for the reason that the witness isn't qualified—and although he had stated that he thought he knew its market value, he has previously stated the means from which he forms that opinion, which of itself shows that he has no such

opinion as would qualify him to testify to the market value of that property.

"Objection overruled.  Excepted to.

"*Q.*  What is its market value?  *A.*  I stated awhile ago—$100 per foot.

"*Q.*  What is the market value of lots 5 and 6, in block 4?  *A.*  I should judge about the same.

"*Q.*  You say all the property in here (indicating on map)?  *A.*  Perhaps this near the corner would be a little higher.  The corner lot would be worth $25 more.

"*Q.*  How does the running of the railroad through the property affect it, Mr. James?  *A.*  It makes those lots shorter and depreciates the value of them.

"*Q.*  Take that property north of the railroad—lot 5—is there any way to get out from that property north of the railroad after its construction?  *A.*  Not without going over the railroad, that I see.

"*Q.*  How is it with lots 5 and 6, in block 4?  *A.*  The same.  It leaves each of those lots in the same condition, as far as I can see."

It is difficult to lay down any fixed and definite rule as to what acquaintance with property a witness must have or as to how his information must be derived, to say just when his opinion as to the value of property shall be received and when excluded by the court.  He is an exception to the rule applying to expert witnesses in general, and whether he has acquired sufficient information to qualify him to give an opinion is a question that must rest largely within the discretion of the trial court.  If through the general avenues of information to which the average business man resorts to inform himself of values for the proper conduct of his business, and to guide his sales and purchases of the character of property in controversy, the witness has derived his information, he is qualified to testify, and

it is then for the jury, in view of the manner of the acquisition of the information detailed to them by the witness, to say what consideration will be given his estimate. It was no error to permit this testimony to go to the jury for what it was worth.

IV. Two witnesses called by defendants were asked, on cross-examination, the following questions by plaintiffs' counsel:

"*Q.* State to the jury whether Kansas City hasn't adopted this particular piece of ground as a pumping station for its new waterworks?"

"*Q.* I will ask you whether the location and adoption of this particular piece of ground, as a pumping station for the new city waterworks, wasn't made before the railroad was built through there?"

"*Q.* I will ask you if it should be used for that purpose whether it would not be practical at all to use it for a brickyard, in connection with the pumping station?"

Objection was made to all those questions, and sustained by the court, and for so doing error is alleged by plaintiff.

The inquiry in this case was as to the value of defendants' land at the time of the institution of condemnation proceedings, and not what it might be worth if a part or all of it was to be used as a pumping station for the city waterworks. It would be worth all to these defendants, if appropriated by the city for a waterworks station, that it would be if appropriated by the plaintiff for right of way purposes, and, whether the one or the other contemplated to appropriate it, the defendants would be entitled to the value of the property taken and their damages to the remainder occasioned thereby. The unexecuted design of the city of Kansas City to appropriate all or a part of defendants' property, thereby depreciating its value, by its

use, is of no avail as against an executed appropriation of a part thereof by plaintiff. The city may abandon and never execute its design to locate its pumping station on plaintiff's property. No proceeding has yet been instituted looking to that end, or if it be agreed that the city authorities would use these lots or a part of them for one of its pumping stations, how can that avail the present plaintiff who by its appropriation of a part of defendants' lots now, has rendered the remaining portion of their property less valuable for the purpose of assessments of damages when the city condemnation proceedings are begun? The trial court properly denied the testimony offered.

The objection by plaintiff to the action on the part of the trial court in permitting the witness Brooks to give the value of the entire brick plant, as located on the lots mentioned in the petition, as well as on those used in connection therewith, is not well taken when we consider the testimony of the witness as a whole, and as viewed in the light of the instruction given on the proper measure of damages.

After stating the value of the entire plant as it stood before the construction of plaintiff's railroad, the following question was then asked him:

"*Q.* What is it worth since the road has run through it as it stands there, or as it could be disposed of?

"*By the Court:*—or used.

"*Q.* Taking into consideration all the changes. *A.* If it could be taken apart and used somewhere else?

"*Q.* Yes, sir; or used there?

"*By the Court:* Used there by hauling dirt around. *A.* Its value I would say was depreciated fifty per cent.

"*Q.* You say then the damage would be $5,000. *A.* Yes, sir."

All of which questions and the answers thereto clearly indicate that no wrong impression was intended to be or was in fact conveyed to the jury, as to the damages they should consider. In lieu of stating in direct terms the damages to the plant by reason of the construction of plaintiff's road through the lots on which it was located, or of giving the difference in value of the plant, considering all its uses, before and after the construction of plaintiff's road (which would be its damage), the court simply permitted the witness to give the entire value of the plant before being interfered with by plaintiff, and its per cent of depreciation since, which was but the equivalent of saying in the first instance the damage to the plant was $5,000, and could not be considered otherwise by the jury called upon to ascertain the amount of the damages to, and not the determination of, the value of the property at the time of the plaintiff's entry upon the same.

Several minor objections have been urged by the appellants to the action of the trial court in the matter of receiving and excluding testimony, which we think unnecessary in the determination of this case to discuss.

Plaintiff has also assigned as error the giving of each and all of defendants' instructions by the court, as well as the refusal of one asked in its behalf. As the grounds for its objection to instructions given and refused have been discussed in considering the objections made to the exclusion and receiving of testimony herein, no further notice will be made of them now. The instruction as a whole presented the issues fairly to the jury, and the amount of the verdict is not such as to indicate that the jury was actuated by undue in-

fluence or bias in any regard. The judgment of the circuit court will be affirmed. BARCLAY, P. J., and MACFARLANE and BRACE, JJ., concur.