## CITY OF ST. LOUIS
### v.
## PANDJIRIS WELDMENT CO. et al.

No. 44016.

Supreme Court of Missouri.

Division No. 2.

July 12, 1954.

Samuel H. Liberman, Oliver T. Johnson, St. Louis, J. B. Steiner, Warrensburg, for appellant.

Ivon Lodge, St. Louis, for respondents.

BOHLING, Commissioner.

This is an appeal by the City of St. Louis from a final judgment sustaining an award of $24,723.75 damages, with no deductions for benefits, to The Pandjiris Weldment Company, a corporation, respondent, in Item 6 of the commissioners' report in a condemnation proceeding. The

city questions the admissibility of certain evidence on the hearing upon the exceptions before the court and claims the award is grossly excessive, stating $3,000 would be a liberal appraisement of the damages. Jurisdiction of the appeal is in this court under City of St. Louis v. Franklin Bank, Mo.Sup., 107 S.W.2d 3[1].

The land is known as 5151 Northrup avenue, St. Louis, Mo., fronts on the north line of Northrup avenue (an east-west street) 257.46 feet and extends between parallel lines northwardly to the River des Peres Drainage Works more than 900 feet along its east border and more than 800 feet along its west border. North of the 150 foot right of way of the River des Peres Drainage Works is the 100 foot right of way of the St. Louis-San Francisco Railway.

The condemnation proceedings were originally instituted under Ordinance No. 44,486 to acquire (§ 1) a public sewer right of way, 25 feet wide, extending, approximately 450 feet north of Northrup avenue, westwardly 1351.07 feet, and (§ 2) a site for a public sewer pumping station between the River des Peres and a point on the east line of respondent's land approximately 391 feet north of Northrup avenue, and extending westwardly beyond respondent's land. A later Ordinance, No. 44,931, repealed § 1 of Ordinance No. 44,-486, relating to the establishment of the 25 foot public sewer right of way.

Each party filed exceptions to the report of the commissioners, and each exception was overruled. Respondent has not appealed. The city's exception was on the ground the commissioners' award was grossly excessive.

 Under the Charter of the City of St. Louis (Art. 21, §§ 3 and 7), if there be a failure to timely demand a trial by jury, the commissioners have exclusive authority to assess the damages and their award has the effect of a jury verdict. Their report is presumptively valid and stands until established to be wrong in point of law or matter of fact. The court

"may order, on cause shown, a new assessment * * * under additional instructions of the court." The burden is on the exceptor to the award "to introduce sufficient substantial evidence to convince the court that the report was wrong" before it lawfully may be set aside. In the proceedings upon the exceptions the report of the commissioners is before the court for consideration. City of St. Louis v. Franklin Bk., 340 Mo. 383, 100 S.W.2d 924, 926; City of St. Louis v. Franklin Bk., Mo.Sup., 100 S.W.2d 927, 928; City of St. Louis v. Franklin Bk., 341 Mo. 913, 110 S.W.2d 734[1, 4]; City of St. Louis v. Pope, Mo.Sup., 121 S.W.2d 861, 864[5-7]; City of St. Louis v. Rossi, 333 Mo. 1092, 64 S.W.2d 600, 602.

The commissioners go upon the land and make a personal observation and study of the property and its surroundings, and hear the evidence the parties adduce before them. They have an advantage over the court and even a jury, and where the sole exception is that the award is grossly excessive, their report is entitled to great weight with the trial judge. City of St. Louis v. Franklin Bk., 341 Mo. 913, 110 S.W.2d 734, 736; City of St. Louis v. Brown, 155 Mo. 545, 567, 56 S.W. 298, 303; City of St. Louis v. Pope, Mo. Sup., 121 S.W.2d 861, 864[4].

Respondent owned approximately 196,-000 square feet of land and the city is taking approximately 101,800 square feet off of the north end. The land is fairly level north of Northrup avenue for about 391 feet, at which point there is a sharp drop of about 44 to 48 feet in a short distance. It then levels off to the north property line. It was purchased in March, 1945, for approximately $4,500. To the west are some small single-family residences, and immediately east is the Evens & Howard Sewer Pipe Co. Respondent had been in business six years up to the time of trial. Its gross sales had increased from $10,000 for the first year to very close to $1,000,000 for the last preceding year. The improvements, four or five buildings, are on the south part of the land, with a level space of about 230 feet north of the

buildings. It is in a rather important industrial section. Witnesses, including the city's, thought respondent did very fine work. A city's witness stated, although handling "pretty heavy stuff," respondent was a job or fixture shop. Other witnesses stated that, although respondent does job work, its business is welded fabrication; that it is not a job shop; and that it operates as a heavy industrial plant. We understand respondent does business under long running contracts for approximately seventy-five regular customers, including large industrial plants as far west as Colorado. It fabricates large parts, weighing 20,000 pounds, and requiring 30 to 40 feet of lift to pass. The proceedings were instituted in 1948. Final judgment was entered September 22, 1952. There was testimony that respondent had lost business because it had not expanded fast enough to take care of it.

The city called William Garton, Enno Kraehe and Robert Brooks as witnesses. Mr. Brooks, a consulting engineer, did not undertake to establish the damages. Mr. Garton and Mr. Kraehe considered the 101,-800 square feet as being of no value to respondent's business and its taking does not damage the remaining property. Each appraisal was of the land without improvements. Mr. Garton valued the land at $26,-875; the remainder, after the taking, at $24,375, and the damages at $2,500. He testified: "I don't know anything about steel plants." Mr. Kraehe valued the land at $24,453; the remainder, after the taking, at $21,450, and the damages at $3,000. He testified "my assignment covered the land only" and that the 101,800 square feet was "marginal or submarginal land," land which, when made productive, barely returns the costs of the capital and labor required to make it productive.

Other testimony was that the land was an ideal location for respondent and afforded the minimum space needed for the future; that, although the north part had not been used, the drop would not impair its use in respondent's business but would be an advantage, because as an industrial plant grows it needs a higher and higher assem-

bly base and a difference in the grade permits of the use of a craneway without lowering the floor level. Respondent works on the larger jobs with the heavy crane outside of the buildings for about seven months of the year. Respondent's business is competitive. It cannot continue as a going concern if steel purchases be in small lots. Purchases in large quantities are required, and the space not under cover and north of the buildings is used for storage and other purposes. At times the amount of steel on the property and the accessibility requirements in connection with it are very large.

Anthony Pandjiris, president of respondent, estimated respondent's damages in the neighborhood of $40,000.

William C. Bernard, a consulting civil engineer and valuation consultant, placed respondent's damages at $52,325, stating this amount could be minimized. He considered the tract as a whole, with the improvements, and arrived at his figures by taking the asking and sale prices of comparable property in the community. He testified that heavy industry was the best use to which land could be put; that respondent would have to have more than 95,000 square feet to continue as a heavy industrial plant; that respondent's craneway could be extended easily to the north to serve the northern end of the property. There was corroborating testimony. He placed a value on the land, without improvements, of $61,460, approximately 32 cents a square foot, stating the buildings would add $65,000 to that figure. As we read his testimony he put respondent's damages minimized around $44,000, about $20,000 more than the Commissioners allowed.

The trial was to the court. There was no request for findings of fact or conclusions of law. The sole exception of the city to the report of the commissioners was that the award of $24,723.25 "grossly exceeds the amount of just compensation for the taking and for the damaging of the property of the said defendant." The evidence questioned by the city so far as material to the issue presented by appellant's excep-

tion went to establish respondent's damages. Some of the questioned testimony, from the remarks of the court, was not for consideration. Some was presented on the theory it could be disregarded if improper, the trial being before the court. Our view is that the court was not considering incompetent evidence bearing on the issue. The court had the case under advisement for some time. We may not say under the instant record, without speculating, that an abuse of discretion occurred or incompetent prejudicial evidence was considered by the court and the approval of the award constituted reversible error, or that the commissioners applied erroneous principles in reaching their award.

■■ The weight and credibility of the evidence is for the trial court. Appellate courts do not weigh conflicting evidence on appeal in condemnation cases. City of St. Louis v. Franklin Bk., 341 Mo. 913, 110 S.W.2d 734, 735[1]; City of St. Louis v. Pope, Mo.Sup., 121 S.W.2d 861, 863[3]; City of St. Louis v. Franklin Bk., Mo.Sup., 107 S.W.2d 3, 4[3] (where respondent introduced no testimony). It is not the law that the commissioners' report should be set aside unless supported by competent and substantial evidence at the hearing on the exceptions. The respondent may but is not required to introduce evidence in support of the report. "The report is presumptively valid and must stand until overthrown by sufficient competent evidence, and the burden was on the exceptor to overthrow it." The determination of whether the report is right or wrong is within the judicial discretion of the trial court, and appellate courts should not interfere unless the award is so grossly excessive or inadequate as to establish an abuse of discretion or arbitrary action. City of St. Louis v. Franklin Bk., 341 Mo. 913, 110 S.W.2d 734, 736; City of St. Louis v. Rossi, 332 Mo. 498, 58 S.W.2d 965, 966[1]; City of St. Louis v. Pope, Mo.Sup., 121 S.W.2d 861, 864[4].

■ With the weight and credibility of the evidence for the trial court, the preponderance of the probative evidence in the instant case sustained the award of the commission. The judgment does not appear to be clearly erroneous, § 510.310, RSMo 1949, V.A.M.S., and we are not convinced that error was committed against the appellant materially affecting the merits of the action, § 512.160, Id. Appellant has not established that the court based its approval of the commissioners' report upon prejudicially incompetent evidence requiring a reversal of the judgment.

The judgment is affirmed.

WESTHUES and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

LEEDY, Acting P. J., and BROADDUS and ANDERSON, Special Judges, concur.