**PUBLIC WATER SUPPLY DISTRICT NO. 2 OF JACKSON COUNTY, Missouri, a Municipal Corporation, Appellant,**

v.

**The ALEX BASCOM COMPANY, a Missouri Corporation, Respondent.**

No. 49365.

Supreme Court of Missouri,

Division No. 2.

Sept. 9, 1963.

Richard A. Erickson, Charles V. Garnett, Kansas City, for appellant.

Wm. Coleman Branton, James E. Grier, Kansas City, Brewer, Myers & Branton, Kansas City, of counsel, for respondent.

STORCKMAN, Presiding Judge.

This suit is for the condemnation of land to be used as a site for water storage, pumping, and distribution facilities. The plaintiff is a public municipal corporation organized under Chapter 247, RSMo 1959, V.A.M.S., for the purpose of supplying water to the public. The land taken consists of three lots in the southeast corner of defendant's platted subdivision. The commissioners appointed by the trial court made a damage award of $20,300 and both parties filed exceptions. The jury awarded

damages in the amount of $28,215. The plaintiff's motion for new trial was overruled and it has appealed.

█ Since the judgment is for $28,215 and the appellant contends the maximum the respondent is entitled to recover is $12,250, the amount in dispute, exclusive of costs, exceeds the sum of $15,000 and this court has jurisdiction of the appeal. Section 3, Art. V, Constitution of Missouri 1945, V.A.M.S.; § 477.040, RSMo 1959, V.A.M.S.

On December 12, 1960, the defendant contracted to purchase 41.69 acres of land in the City of Raytown, Jackson County, Missouri. The sale was consummated on February 17, 1961, and on the same day the defendant recorded a plat dividing the tract into a residential subdivision designated South Brooke Estates consisting of 141 lots. On or about January 20, 1961, the plaintiff began negotiating with the defendant for the purchase of a portion of the tract as a site for water storage, pumping, and distribution facilities. No agreement was reached and on March 20, one month and three days after the plat was filed, the plaintiff instituted this condemnation action.

When platted, South Brooke Estates was bounded on the south by 75th Street and on the other three sides by other residential subdivisions. The condemnor took lots numbered 20, 21, and 22 in the southeast corner which had a combined area of about one acre, a depth of 170 feet, and a frontage of 245 feet. At the time of the taking, the defendant was the owner of lots abutting the site on the north and of lots across Willow Street to the west. The defendant claims these adjacent lots were damaged by reason of their exposure to the site for water storage, pumping, and distribution facilities. The plaintiff contends the damages must be restricted to the market value of the three lots actually taken.

The lots taken had a higher elevation than any other lots in the subdivision and also a greater depth. Mr. Alex S. Bascom, president of the defendant company, testified that because of their elevation and location these lots were more desirable and he intended to build model homes on them for display purposes in connection with the sale of other lots in the subdivision and the building of homes on them. He further testified that the three lots had a reasonable market value of $18,375 based on a valuation of $75 per front foot. Other witnesses for the defendant fixed the value of the three lots at $12,240 and $12,550 on a basic value of $50 per front foot. One of the plaintiff's witnesses testified that the value of the three lots was approximately $10,000 and the other $9,800.

Mr. Bascom testified that other lots in the vicinity of the site were damaged in the sum of $38,000 and that the defendant's total damage was $56,375. Two other realtors and appraisers testified on behalf of the defendant that adjoining lots in the subdivision were damaged by the taking. One fixed this damage at $26,559.50 and the other at $26,715. The plaintiff's evidence tended to prove that the present plan of the water district was to install water pumps and a concrete water storage tank 125 feet square with a capacity of 1,500,000 gallons of water on this site; that the tank and pumps would be entirely covered with earth except for two concrete vents and access towers about four feet square and five feet high; and that the surface of the site would be grass-covered and landscaped. Two witnesses for the plaintiff testified that the site in that condition would cause no damage to the remaining subdivision lots. One of plaintiff's witnesses admitted that, if the plaintiff fenced the site, installed an office, or used the site for pipe storage, the value of lots in the vicinity would be depreciated about 50 percent.

The water district's first contention is that the trial court erred in giving on behalf of the defendant instruction 1, in refusing plaintiff's instructions 3 and 8, and in overruling plaintiff's objections to evidence of alleged damage to lots in the sub-

division other than the three lots actually taken. The plaintiff asserts that the defendant's right of recovery is limited to the fair market value of the three lots actually taken because the lands comprising the subdivision were laid out and platted by the defendant with the intention of constructing residences thereon and selling the improved lots separately. The fact of platting and the intention to develop the tract as a residential subdivision were admitted by the defendant.

Instruction 1 directed the jury to allow the defendant the fair and reasonable market value of the three lots "actually taken and appropriated" by the water district and further to allow damages, if any, "to the remainder of defendant's subdivision as of March 20, 1961, caused by the taking of said three lots for water storage, pumping and distribution facilities" if the jury further found that the land was being used and developed by the defendant "as one tract or body of land on March 20, 1961." The plaintiff's offered instruction 3 would have instructed the jury that "you may not take into consideration either benefits or damages to any other property of defendant" except the three lots actually taken. To the same effect, plaintiff's offered instruction 8 limited the jury to "damages at the fair market value of the three lots actually taken". The essence of the plaintiff's claim of error is that evidence of damage to lots other than the three actually taken was inadmissible because the subdivision had been platted and the lots were being developed as residential sites to be separately owned. At the time of the taking, none of the lots in question had been developed or sold and no streets or improvements had been installed in that vicinity. There was some evidence that *at the time of the trial* lots had been sold and residences constructed in other parts of the subdivision but not in the vicinity of the water storage site.

In support of its first point, the plaintiff relies solely on School District of Kansas City v. Phoenix Land & Improvement Co., 297 Mo. 332, 249 S.W. 51, a proceeding to acquire certain subdivision lots as a site for a high school. The condemnee appealed and the judgment was reversed and the cause remanded for a new trial on the ground that it was improper to permit a witness for the condemnor to disclose to the jury that he was one of the commissioners appointed by the circuit court to assess damages and further that it was prejudicial error to permit the witness to testify concerning the amount of damages fixed by commissioners since the report of the commissioners became functus officio when a jury trial was ordered on the issue of damages. The appellate court also considered a further claim of the condemnee that the trial court had erred in refusing to allow him to prove damages to remaining lots in the subdivision. The court complained of the failure of the appellant to set out the evidence excluded, but from its own examination of the record the court concluded the facts to be in substance that some fifteen years before the condemnation action was instituted the defendant purchased 80 acres of land and platted it into about 400 lots including the 53 sought to be condemned; that residences had been built on about 200 of the lots; that the evidence clearly disclosed that the condemnee had never used the tract as an entirety but, on the contrary, lots were laid off and platted by the defendant with the intention of having residences constructed thereon and sold separately. The court rule that platting the land as a subdivision made "a prima facie case as to segregation" and overruled the additional assignment of error. 249 S.W. 51, 55. The Phoenix case, decided in 1923, has never been cited in support of the proposition for which the plaintiff contends. The ruling made was unnecessary to the disposition of the appeal and on the general proposition that evidence of residual damage was not admissible appears to be contrary to the rationale in other Missouri decisions and to the weight of authority in other jurisdictions. We do not consider it controlling on the facts of the present case.

A comprehensive annotation in 6 A.L.R.2d 1197, entitled "Unity or contiguity of properties essential to allowance of damages in eminent domain proceedings on account of remaining property", states the general rule as to the effect of platting a tract of land as follows, p. 1207: "Mere paper divisions are usually to be disregarded. Where the remaining land for which damages are claimed is divided from the land taken, or partly taken, only by a lot line, or where the land as a whole has been platted into lots, blocks, streets, and alleys, no corresponding change having been made in the physical condition or legal ownership of the property, the entire tract will be treated as a single parcel."

Missouri condemnation decisions generally support this statement of the rule. In the case of St. Louis, Memphis & S. E. R. Co. v. Aubuchon, 199 Mo. 352, 97 S.W. 867, 871, 9 L.R.A.,N.S., 426, the court states that "in the determination of this question mere paper governmental subdivisions into sections, quartersections, townships, ranges, etc., amount to nothing in determining the oneness or unity of a tract of land." See also Kansas City S. B. R. Co. v. Norcross, 137 Mo. 415, 38 S.W. 299, 301[1], and Chicago, M. & St. P. Ry. Co. v. Baker, 102 Mo. 553, 15 S.W. 64. The mere fact that a tract of land is divided by a highway, street, or alley, does not preclude its being considered as a unit or entirety for the purpose of assessing damages in a condemnation case. St. Louis, Memphis & S. E. R. Co. v. Drummond Realty & Investment Co., 205 Mo. 167, 103 S.W. 977, 978[3]; Hannibal Bridge Co. v. Schaubacher, 57 Mo. 582.

In State ex rel. State Highway Commission v. Young, 324 Mo. 277, 23 S.W.2d 130, in addition to having the usual governmental subdivisions, the farm was occupied by different tenants who farmed their respective parcels separately. This was held not to destroy the oneness of the farm, the court stating 23 S.W.2d 132: "It is a well-established rule that where a tract of land consists of several parcels all connected and forming one body and owned and used together for a common or general purposes and as one property, the jury, in estimating the damages sustained by the owner by reason of the condemnation, should consider the injury to the whole, and not simply the injury to the parcels touched by the appropriation."

In Missouri Pac. R. Co. v. Omohundro, Mo.App., 39 S.W.2d 561, 562, the court stated: "Furthermore where, as here, the defendants are the owner of separate and distinct lots, as shown by the plat introduced in evidence, and the right to condemn affects only one or more of the several lots, but not all of them, and the issue is raised by the owners of the property that all of the lots are in fact one tract of land, and that therefore all of the lots should be treated as a whole in determining the question of damages, such question as to whether the tract is an entirety or not should be submitted to the jury under appropriate instructions."

A frequently cited case dealing with this problem is Currie v. Waverly & N. Y. B. R. Co., 52 N.J.L. 381, 20 A. 56, 19 Am. St.Rep. 452. The tract of land had been platted into town lots including streets and avenues. The railroad company condemned a strip 100 feet wide across the subdivision. Some years previous to the taking, lots had been offered for sale but no lots adjacent to the condemned strip had been sold. The appellate court held that the mere platting into lots and streets did not affect the unity of the land, stating 20 A. 57: "As the case comes before us, there is nothing actually upon the ground, nor is there anything constructively in the conduct of the owner, to break the previous unity of his title over his entire tract." See also 18 Am.Jur., Eminent Domain § 270, pp. 910–911, and 29 C.J.S. Eminent Domain § 140, p. 984.

The tract of land in the vicinity of the water storage site had not been developed at the time of the taking and remained practically in its original condition. No

streets, sewers, or other improvements had been installed and the defendant retained title to all of the lots. There was also evidence that the tract was being used as a unit. The purchase price of the land was $125,000 and the defendant obligated itself to develop the subdivision at a total cost of $283,000 including the cost of the land. A mortgage was placed on the subdivision as an entirety at the time of the purchase, and the lots in question were covered by a deed of trust at the time the condemnation was filed. The trustee under the deed of trust and the mortgagee, Prudential Insurance Company of America, were originally made party-defendants but were dismissed on the filing of a disclaimer to the proceeds of the condemnation. The defendant also developed lot 140 as agreed with a swimming pool and as a playground for the benefit of all residents of the subdivision. The defendant was obligated to improve and develop the subdivision as a whole. At the time of the condemnation, the defendant was engaged in a business venture encompassing the tract as a whole. The business purpose was to develop the tract as a subdivision and to dispose of the lots and improvements. The financing, as well as other agreements and obligations, applied to the entire tract and each part of it.

▮▮▮ There was substantial evidence from which the jury could reasonably find that no change corresponding to the lot lines had been made in the physical condition or legal ownership of the property, that the lots in question were united in use at the time of the condemnation and should be treated as a single parcel. The issue was properly submitted to the jury. It follows that the trial court did not err in admitting evidence of damage to the remaining lots and in giving defendant's instruction 1 submitting that theory of damages and in refusing plaintiff's instructions 3 and 8.

Plaintiff next contends that the trial court erred in refusing to give instruction No. 7 which reads as follows: "The court instructs the jury that, in determining whether there is any damage to the defendant, you shall not take into consideration such inconveniences and disadvantages, if any, to the defendant as are the consequences of the lawful and proper use of the plaintiff water district of the land in question in so far as the same are common to the other landowners in the neighborhood, no part of whose lands are taken for said water storage facilities." Coupled with this assignment is the charge that the court erred in rejecting evidence and offers of proof of damages common to other landowners in the neighborhood. The plaintiff cites four state highway condemnation cases and one railroad case which tend to support the giving of such an instruction. They are: State ex rel. State Highway Commission v. McMurtrey, Mo., 300 S.W.2d 521; Missouri, A. & G. R. Co. v. Harris, Mo., 181 S.W. 34; State ex rel. State Highway Commission v. Sharp, Mo.App., 62 S.W.2d 928; State ex rel. State Highway Commission v. Stoddard Gin Co., Mo.App., 62 S.W.2d 940; and State ex rel. State Highway Commission v. Watkins, Mo.App., 51 S.W.2d 543. Another such case is State ex rel. State Highway Commission v. Graham, Mo.App., 74 S.W.2d 493.

The rule upon which this type of instruction is based appears to have originated with respect to disturbances produced by the operation of railroad trains. See Harris, 181 S.W. loc. cit. 35[3] and, for a more complete statement of the rule, Nichols on Eminent Domain, 3d Ed., Vol. 2, § 6.4434(5), p. 360. The Watkins case, apparently the first to apply the rule to highway cases, states, 51 S.W.2d loc. cit. 545: "Certainly the same rule should be applied to motor traffic which, in that respect, can hardly be compared to the annoyance made by the roar, whistle, soot, and smoke of the locomotive." An instruction such as No. 7, if given the broad application for which the condemnor con-

tends would be misleading in this kind of case.

We have been cited to no Missouri case applying the rule to a case of this character, and our own search has disclosed none. We find authority, however, which indicates that the scope of the instruction should be limited and clarified if offered in a case of this nature. Siemers v. St. Louis Electric Terminal Ry. Co., 348 Mo. 682, 155 S.W.2d 130, originated as an injunction suit to prevent the defendant from obstructing access to plaintiffs' property by reason of the construction of a subway in the street, but it proceeded as a condemnation case by stipulation of the parties. One of the questions presented on appeal is practically identical with the present one. As stated by the court, it is, 155 S.W. 2d loc. cit. 136: "Should instruction No. 1, as to damages for interference with access, have been restricted as claimed? As stated, defendant says that plaintiffs' instruction No. 1 is bad because it did not restrict damages, for interference with access to the building, to such damages, if any, that were different in character to that sustained by all other abutting owners. This complaint is the same as the complaint on the refusal of defendant's instruction H, which follows: 'The court instructs the jury that if you believe and find the interference of access to plaintiffs' property was no different in character than the interference with access of other property owners along the line of the building of the subway and widened street, the plaintiffs cannot recover for any loss on account of such interference, and all such claims are withdrawn from your consideration.'" The opinion cites and quotes from authorities distinguishing between interference with travel along a public street which is a personal right not within the protection of the constitutional provision, § 26 of Art. I, and the destruction or material impairment of an owner's access to his property which is a taking or injury to private property protected by the constitution. This court held that the refusal to give instruction H and the refusal to limit instruction 1 was not error stating, 155 S.W.2d loc. cit. 136: "Instruction H, however, is broad enough to deny recovery for interference of access, even though access, to plaintiffs' house, from the street in front were entirely prevented, provided it should be that such was the case with all other abutting owners. Such is not the law." Instruction 7 in the present case has the further vice that it is not related to or identified with any particular inconvenience or disadvantage.

Lewis on Eminent Domain, 3d Ed., Vol. I, § 364, p. 665, makes this statement of the rule: "According to the rule laid down in the last section the owner of property may recover, as for a damage or injury, under the constitution, though the only actual injury or wrongful act complained of consists of an obstruction or interference with a right which he enjoys in common with the public. In such case, it is the universal rule that the plaintiff must show an injury or damage which is special and peculiar to himself; as distinguished from that suffered by the public at large. But diminution in value of the property, resulting from the interference, is a special and peculiar injury within the rule." A similarity in principle between the ascertainment of damages and benefits in condemnation cases is indicated by Filger v. State Highway Commission, Mo.App., 355 S.W.2d 425, 428 [1], wherein it is stated that: "Traffic, great or small, is merely an incident of streets and highways and cannot be considered either as an element of damages or benefits."

A landowner's complaint about a comparable instruction dealing with special benefits was stated and disposed of in State ex rel. State Highway Commission v. Young, 324 Mo. 277, 23 S.W.2d 130, 134 [8], as follows: "Respondent's instruction No. 1 is further assailed on the ground that it erroneously defines 'special benefits' to be those which are unique and enjoyed by the respondent's farm alone. That part of the instruction told the jury that from the damages ascertained they 'should deduct the

benefits, if any, peculiar to such tract arising from the running of the road through it; and by peculiar benefits is meant such benefits derived from the location of the road as are *peculiar to the tract itself*, and not shared in common by it and *other* lands in the same neighborhood.'

"In the giving of this instruction the learned trial judge followed a form approved in McReynolds v. Kansas City, C. & S. Ry. Co., 110 Mo. 484, 487, 19 S.W. 824, and later sanctioned in theory in Mississippi County v. Byrd (Mo.Sup.) [319 Mo. 697], 4 S.W.(2d) 810, 812. But since the trial of the case below an instruction of similar pattern was condemned by this court en banc in State ex rel. State Highway Commission v. Jones [321 Mo. 1154], 15 S.W. (2d) 338, 340. That decision holds the advantages enjoyed by land from abutting on a highway improvement may be a special benefit, notwithstanding other lands along the highway are similarly benefited. In other words, the special benefits do not have to be exclusive and peculiar to the one tract involved. Following the well-reasoned opinion in the Jones Case, an instruction identically like the one in this cause was disapproved in State ex rel. State Highway Commission v. Duncan (Mo.Sup., Div. 1) [323 Mo. 339], 19 S. W.(2d) 465, 466, 467. So it must be ruled the giving of the instruction in this instance was error." The logic of the ruling is further demonstrated by the discussions in the Young, Jones, and Duncan cases which need not be repeated here. The analogy to an instruction on special damages is so similar as to be strongly persuasive. In fact two of the four authorities cited in Harris, 181 S.W. 34, 35 [3], in support of the approval of this type of damage instruction are cases dealing with benefits, general and special. See Quincy, Mo. & Pac. R. Co. v. Ridge, 57 Mo. 599, 601, and Southern Illinois & M. Bridge Co. v. Stone, 194 Mo. 175, 183, 188, 92 S.W. 475. In the other two cases cited, the "inconveniences" referred to in the instructions were identified as smoke, noises and other disturbances from the operation of trains. In this case the plaintiff claims that substantial evidence of damage to the market value of the remaining land should be rejected and the defendant's recovery limited because other landowners in the area suffered damages of the same kind. We doubt if this sort of instruction was intended to apply to such elements of damage.

Generally, an impairment of the market value of the remaining land arising out of the use to be made of the land taken can be considered by the jury as an element of damages in ascertaining the just compensation to which the condemnee is entitled. Art. I, § 26, Constitution of Missouri 1945; KAMO Electric Cooperative, Inc. v. Baker, 365 Mo. 814, 287 S.W.2d 858, 861–862 [3–7]; Prairie Pipe Line Co. v. Shipp, 305 Mo. 663, 267 S.W. 647, 649 [3]; St. Louis Belt & Terminal Ry. Co. v. Mendonsa, 193 Mo. 518, 91 S.W. 65, 67 [2]; 18 Am.Jur., Eminent Domain § 265, p. 905.

The extent of the condemnor's rights in the land taken as fixed by the petition may be considered in ascertaining the condemnee's damages since it is presumed that the appropriator will exercise his rights fully. Union Electric Co. v. Levin, Mo.App., 304 S.W.2d 478, 481 [1]. The purpose of taking the land as expressed in the petition was as "a site for water storage pumping and distribution facilities." The defendant's evidence tended to prove that water supply companies sometimes installed storage tanks above ground, fenced their properties, erected office buildings and stored pipe and other supplies on their premises. The evidence further tended to prove that the present use and the authorization of other uses had diminished market value of the remaining land.

According to the plaintiff's evidence, present plans for use of the land taken were limited to the installation of the concrete underground storage tank which tank "was about the right size for the needs of the District for several years, 10, 15, or

20 years in the future, depending on its rate of growth". This evidence did not preclude the jury's consideration of other possible uses. The expression of an intention by the condemnor or the probability that he will not exercise rights of user specified, or reasonably implied, in the condemnation petition is not sufficient to exclude consideration of such rights in the assessment of the condemnee's damages. State ex rel. State Highway Commission v. Johnson, Mo., 287 S.W.2d 835, 839 [6]; Union Electric Company v. Levin, Mo.App., 304 S.W.2d 478, 481 [2].

■ In the circumstances of this case, the trial court did not err in refusing to give plaintiff's instruction 7 by which the plaintiff proposed to withdraw from the jury's consideration damages based on the diminished market value of the defendant's remaining land solely because other landowners had suffered similar damage. Siemers v. St. Louis Electric Terminal Ry. Co., 348 Mo. 682, 155 S.W.2d 130, 137 [13]; State ex rel. State Highway Commission v. Young, 324 Mo. 227, 23 S.W.2d 130, 134 [8]; St. Louis Belt & Terminal Ry. Co. v. Mendonsa, 193 Mo. 518, 91 S.W. 65, 67 [2].

■ Neither did the court err "in rejecting all evidence and offers of proof of such common damages". At a conference in chambers before the selection of the jury, plaintiff objected to any testimony concerning "severance damages" to any adjoining property of the defendant; one of the grounds specified was that any damages so claimed would be common to the neighborhood. It should be noted that this objection referred to evidence which the plaintiff anticipated the defendant would offer regarding the existence and amount of damage to the defendant's remaining land. It did not involve evidence that the plaintiff proposed to offer which is the plaintiff's immediate complaint. During the direct examination of two of plaintiff's witnesses, Luke Choplin and John M. Propst, the plaintiff undertook to interrogate them whether there would "be any greater dam-

age" to defendant's remaining lots "than to the area to the east" and "whether the same damages, if any, would accrue to the people on the east and south as on the west and north". Objections were sustained to these questions as well as offers to prove by these witnesses that the damages to the defendant's property would be the same as to other property in the neighborhood. The proposed testimony was irrelevant to any proper issue in the case; it called for conclusions of the witnesses which would have invaded the province of the jury. The trial court did not err in excluding the testimony offered.

■ Next the plaintiff contends that the trial court erred in refusing to give this instruction, identified as No. 9: "You are instructed that the fair market value of the three lots in question is not to be determined by their value to the plaintiff, or plaintiff's necessity of acquiring it, nor its peculiar value to defendant. These considerations must in no way be allowed to affect the jury's determination of the fair market value of the lots taken by plaintiff." In support of this assignment the plaintiff relies upon St. Louis, K. & N. W. R. Co. v. Knapp, Stout & Co. Company, 160 Mo. 396, 61 S.W. 300, in which it was held that the giving of such an instruction was not error. The instruction is cautionary but the plaintiff asserts it was needed because Mr. Bascom put a peculiar value on the three lots in that he testified that they were worth $75 per front foot, and that he would have built model homes on them and not offered them to the public. The plaintiff stops short of Mr. Bascom's complete testimony. There was further testimony that the defendant would not have offered the lots to the public "for the present", and that the higher price was justified by the fact that they are "higher and better and deeper, and they are on an arterial street." Mr. Bascom also stated that the price he put on the lots was the market value which a willing purchaser would pay a willing seller. It is clear from the record that the defendant's proposed use of the lots for

model homes was by reason of their choice location and dimensions, and would have been temporary. The proposed use as display homes simply demonstrated that Mr. Bascom considered these more desirable than the other lots. There was no evidence that the price of $75 per front foot was a "peculiar value to defendant".

The plaintiff further asserts that it was urgently necessary to acquire this property in order to provide a much-needed water supply. The only evidence touching this subject is in the direct examination of plaintiff's employee and witness John M. Propst. He identified a contract between the plaintiff and Missouri Water Company and testified that it was a twenty-year contract for an exclusive supply of water, that the plaintiff contracted to build a reservoir for the storage of water, and that the proposition was ratified by a vote of the people on February 28, 1961. The offer of instruction 9 presents the anomaly of the plaintiff requesting that the jury be instructed to disregard the evidence it had voluntarily offered. We are convinced from our examination of all the instructions and the evidence in the case that the trial court did not commit prejudicial error in refusing to give instruction 9.

The plaintiff's next point for argument simply states that the verdict is "wholly unsupported by the competent evidence in the case." The substance of the plaintiff's brief argument under this point, however, is that the verdict should have been limited to the three lots in question and that the verdict should be reduced by appropriate order of this court to $12,250. Then for the statement of its final point the plaintiff asserts that: "That part of the jury's verdict which exceeds the actual value of the three lots taken cannot stand, because based entirely on matters which are merely speculative, and may or may not happen." This is but a restatement of the argument made under the previous point. The plaintiff concludes its reply brief with the assertion that the judgment should be reduced to $8,050, all without explanation of why the verdict should be reduced below the $12,250 figure set out in its original brief and above noted. These skimpy statements of the points relied on and the apparent belief that the written argument can be utilized to preserve questions for appellate review is very discouraging to a court that has been trying for years to secure a reasonable compliance with S.Ct. Rule 83.05, V.A.M.R.

These two final points are so interwined that they must be treated together. Insofar as they preserve anything for review, they are slight variations of contentions previously made and disposed of in this opinion. At the plaintiff's request, the court gave instruction 5 which cautioned the jury that "damages, if any, cannot be based or allowed upon matters which are merely speculative and may or may not happen." The defendant's evidence of damage to the market value of the remaining lots as well as the evidence of the market value of the three lots taken was substantial and not speculative.

The verdict was well within the range of damages established by the evidence. An appellate court will not ordinarily disturb a judgment for damages based on conflicting evidence in a condemnation proceeding where the amount awarded is supported by substantial evidence and is within the limits of the proof. State ex rel. Chariton River Drainage District v. Montgomery, Mo., 275 S.W.2d 283, 287 [5]; City of St. Louis v. Pandjiris Weldment Co., Mo., 270 S.W.2d 17, 20 [5]; Union Electric Company of Missouri v. Miller, Mo.App., 354 S.W.2d 341, 344 [6].

The defendant filed a motion to dismiss the plaintiff's appeal for failure to comply with S.Ct. Rule 83.05(a), (2), and (c), V.A.M.R., in that "the appellant's statement of facts is argumentative, incomplete and unfair." The statement is vulnerable to the criticism made of it, and some of the statements of the points relied on also fall short of what is contemplated by (a), (3), and (e) of Rule 83.05. The

points relied on are practically devoid of *reasons why* the rulings complained of are claimed to be erroneous. Nevertheless, the preference to dispose of the case on the merits outweighs the deficiencies in the brief. Therefore, the motion to dismiss the appeal is overruled.

All of appellant's assignments of error have been considered and found to be without merit. Accordingly the judgment is affirmed.

All of the Judges concur.